VALPARAISO STATE BANK, APPELLANT, V. JUL PETER-
MICHEL ET AL., APPELLEES.

FILED NOVEMBER 12, 1913. No. 17,355.

1. **Husband and Wife: Transactions Between: Bona Fides: Evi-
DENCE.** Where the undisputed evidence shows that a judgment
debtor is in possession at his home, and in such control of money
in the form of bills that his wife, at his express direction, deposits
a part of it as indemnity for his release on bail, and his wife after-
wards, in a controversy with his creditors, claims that the money
is hers, but does not so testify, the principle that transactions
between husband and wife by which creditors are prevented
from collecting their just dues will be scrutinized closely, and
proof of their *bona fides* required, will be applied.

2. ————: ————: EVIDENCE. In such a case, *held* that the dominion
and control over the fund exercised by the husband establishes
*prima facie* his ownership of the money, in the absence of any
evidence to the contrary.

APPEAL from the district court for Saunders county:
GEORGE F. CORCORAN, JUDGE. *Reversed.*

*E. J. Clements,* for appellant.

*G. W. Simpson* and *G. H. Simpson, contra.*

LETTON, J.

This is an action against garnishees on account of un-
satisfactory answers in garnishment proceedings. The ap-
pellant is a judgment creditor of C. J. Schwartz. On
August 30, 1909, an execution was issued on the judg-
ment, which was returned unsatisfied. On the same day
an affidavit in garnishment was filed, and a summons in
garnishment issued and served on the Oak Creek Valley
Bank and Jul Petermichel as garnishees. On November
22, 1909, the bank and Petermichel appeared as directed,
and answered as garnishees that they had no money or
property of C. J. Schwartz in their possession or under
their control. On August 28, 1909, C. J. Schwartz, who

is the husband of the appellee, Betty Schwartz, was arrested, charged with a violation of the liquor laws of the state, and was taken by the sheriff to Wahoo, the county seat. At the time of his arrest he desired to give bond, and in the presence of the sheriff he called Mr. Petermichel, who is the cashier of the Oak Creek Valley Bank at Valparaiso, by telephone, told him he was under arrest and had to give a $500 bond, and asked Petermichel to furnish it. Mr. Petermichel testifies that he told him he could not do so unless Schwartz put up a cash deposit; that Schwartz then told him to see Mrs. Schwartz; that he went to see her at the restaurant in Valparaiso, which was the home of Mr. and Mrs. Schwartz; that Mrs. Schwartz went into the back room of the restaurant, and brought in and handed to him a roll of bills of about $550; that he took $500, and returned the balance to her. He further testified that at the time the summons in garnishment in this case was served upon him he still had the $500 in his possession. On cross-examination he stated that it was after Mrs. Schwartz talked to her husband over the telephone that she procured the money. He also stated there was no order made by the court in the garnishment proceedings, and that he had been released from liability on the bond in the criminal prosecution; that afterwards he received an order from Mrs. Schwartz requesting him to turn over to Simpson & Good the $500 placed in his hands as security as soon as he was released from liability, and that on December 14, 1909, a draft for $500 was drawn on him by Simpson & Good, which was paid and charged to his account; that he received the draft and the order from Mrs. Schwartz on the same day, and that Simpson & Good guaranteed that if he had to pay the money they would repay it to him.

The sheriff testified that he heard one side of the conversation which Schwartz had over the telephone with Petermichel and Mrs. Schwartz; that Schwartz told his wife that he had been arrested and would have to lie in jail unless he was able to give a bond; that he had spoken

to Petermichel, who had demanded indemnity, and that "he told her to go in the back room and get $500 out of the money and bring it over to the Oak Creek Valley Bank and deposit with Jul Petermichel."

Plaintiff then called Mrs. Schwartz as a witness, endeavored to elicit by a series of questions, and offered to prove, that she had the telephone conversation with Schwartz with regard to furnishing a bond, and that at his request she deposited in the hands of Petermichel $500 of his money. Objections to the questions and to the offer of proof were made on the ground that the wife was incompetent to testify against her husband; that the transaction and conversation was a communication between husband and wife, to which she is incompetent to testify during the time that the marriage relation existed. The objection and the offer to prove were sustained, to which plaintiff excepted. No further evidence was produced, and the court found for defendants and dismissed the case.

.The answer of the garnishees alleges that the answers made by them in the proceedings were truthful, and that the district court made no order upon them in the case. The answer of Mrs. Schwartz pleads that she is the owner of the $500; that the money was her separate estate and did not come to her from her husband; and that the indebtedness of the other defendants created by depositing the money is due to her alone. Plaintiff's reply denied the affirmative allegations in the answer.

The appellant maintains that the uncontradicted evidence shows that the money belongs to C. J. Schwartz. He also relies upon the principle that transactions between husband and wife by which creditors are prevented from collecting their just dues will be scrutinized closely and proof of their *bona fides* required. *First Nat. Bank v. Bartlett*, 8 Neb. 319; *Lipscomb v. Lyon*, 19 Neb. 511; *Hill v. Fouse*, 32 Neb. 637.

Schwartz did not request that his wife deposit *her* money as security. He merely directed her to "go into the back room and get $500 out of the money * * *

Valparaiso State Bank v. Petermichel.

and deposit it with Jul Petermichel." He also directed Petermichel to go to Mrs. Schwartz, who, apparently in obedience to her husband's direction, went to the back room, procured the money, and delivered it to him. The fact that Schwartz had such power and control over the money as to govern its disposition is a strong indication that it belonged to him. Apparently it was in his possession at his home and subject to his authority. Counsel for appellant suggests the query that, if he had telephoned to a son, a daughter, or an employee, the identical instructions which he gave his wife, and they had procured the money and deposited it in the same manner as Mrs. Schwartz did, no further proof being offered as to ownership, would any one question that the money belonged to Schwartz? We are of opinion that the facts related being undisputed, and no other evidence as to ownership being before the court except that Mrs. Schwartz afterwards gave her attorneys an order for it, the court erred in finding for the defendants. The fact that Mrs. Schwartz failed to testify that the money was hers is also entitled to some weight in considering this question. Her silence seems inconsistent with her claim of ownership.

Having reached this conclusion, it is unnecessary to consider the question as to whether Mrs. Schwartz was a competent witness.

Appellant takes the position that this is an action in equity which this court tries *de novo*, and that if we find the evidence is sufficient we should proceed to enter a decree in its favor. In this we think he is mistaken. An action against a garnishee for a false or unsatisfactory answer in proceedings in garnishment merely is a suit at law ancillary to the main case in which the judgment is rendered. Perhaps upon a new trial Mrs. Schwartz may be able to prove by sufficient competent evidence that the money actually belonged to her. For these reasons, the judgment of the district court is reversed and the cause remanded for further proceedings.    REVERSED.

BARNES, FAWCETT and HAMER, JJ., not sitting.