GEORGE W. EGGLESTON, APPELLEE, v. JOHN D. SLUSHER ET AL., IMPLEADED WITH HANNAH BURCHAM, APPELLANT.

FILED DECEMBER 16, 1896.   No. 6927.

1. **Husband and Wife:** OWNERSHIP OF PROPERTY. Under the common law, in force in this state prior to the taking effect of the Married Woman's Act, June 1, 1871, the wife's chattels became those of the husband and her choses in action became his when reduced to possession.

2. ———: ———: PROCEEDS OF INSURANCE POLICY: RIGHTS OF CREDITORS. Prior to 1871, a wife received moneys from the estates of her relatives, which she immediately delivered to her husband, who invested them in property in his own name. Certain of this property was insured against fire. It was destroyed by fire and he executed an assignment of the policy to his wife, ostensibly for the purpose of repaying her moneys so by him received. It was not shown that when the husband received the money there was any agreement between him and his wife for its repayment, or that it should be treated as a loan. In a contest between the wife and the husband's creditors, *held*, that the money became his under the law as it existed when it was received; that the subsequent assignment of the policy of insurance to the wife was without considera-

tion, and that the equities of creditors who had also procured as-
signments of the policy, or liens by garnishment proceedings upon
its proceeds, were superior to those of the wife.

APPEAL from the district court of Lancaster county.
Heard below before STRODE, J.   Affirmed.

Stevens & Cochran, for appellant.

R. D. Stearns, F. A. Boehmer, and Ricketts & Wilson,
contra.

IRVINE, C.

This was an action by Eggleston against John D.
Slusher and others, the object of which was to have the
proceeds of a certain policy of fire insurance, issued in
favor of Henry Burcham, applied to the satisfaction of a
judgment recovered by Eggleston against Burcham.
There were several claimants of the fund, and the case
can perhaps be best elucidated by stating, without recit-
ing the numerous pleadings, the claims of the interested
parties, together with a preliminary statement of certain
facts not in dispute.

Henry Burcham was, in 1891, the apparent or actual
owner of a grain elevator, together with certain ma-
chinery, grain therein, and other property connected
therewith, on which he held a policy of insurance for
$3,000.   This property was destroyed by fire.   After the
loss Burcham's rights under the policy were assigned to
the defendant Slusher to secure certain indebtedness
from Burcham to Slusher.   Slusher prosecuted an ac-
tion against the insurance company, recovering a judg-
ment, which was paid by the insurance company.   After
deducting attorneys' fees, together with another claim
upon the fund, the validity of which is not disputed in the
evidence, there remained in the hands of Slusher
$1,950.35, upon which Slusher claims only a lien for $365;
the remainder he is willing to pay to the party adjudged
entitled thereto.   Hannah Burcham, the wife of Henry

Burcham, claims this fund, because she received from sources other than by gift from her husband certain moneys, which she immediately paid to her husband, under an agreement, as she claims, that he would repay the same, with six per cent interest. After the loss by fire he assigned to her the policy of insurance for the purpose of securing and paying to her said debt. This assignment, if valid, antedated all other claims upon the fund, so far as they are evidenced by assignments of or garnishments upon the fund. The plaintiff, Eggleston, claims the fund by reason of an assignment thereof made to him after the loss, and subsequent to the assignment to Slusher. The principal contention, and, in fact, the only one argued in the briefs, is between Mrs. Burcham and Eggleston. Other parties claim liens upon the fund by virtue of garnishments issued after judgments rendered against Henry Burcham. The district court entered a decree finding generally in favor of the plaintiff, and then finding specially, among other things, that Henry Burcham and Hannah Burcham were married in 1867, "and that by the year 1871 she had received from her father's estate about $2,600, which was, immediately upon its receipt, turned over to her husband, Henry Burcham; that all of said money has been used by said Henry Burcham, either in his business, conducted entirely in his own name ever since that date, or used in purchasing land, and that the title to said land has been taken in every instance in his own name, and remained in his name until disposed of by him; that no part of said $2,600 so turned over to said Henry Burcham has ever been repaid to her, except $1,000 paid by Jacob Roche in the spring of 1893." The court further found specially that by reason of Mrs. Burcham's permitting her husband to invest the money in his own name, and to hold out the property thereby acquired by him as his own for more than fifteen years, she had estopped herself from claiming it as against her husband's creditors. Accordingly it was decreed that out of the fund in contro-

versy, after paying the costs, the sum of $365 should be paid to Slusher, and that the plaintiff and other creditors should then be paid in accordance with their claims as against that of Mrs. Burcham. From this decree Mrs. Burcham appeals.

The argument takes a wide range, covering, in a more or less specific manner, many of the problems which confront the court whenever a married woman becomes involved in litigation with creditors of her husband. In order to determine the case it is not necessary to consider many of these arguments. It will be observed that Mrs. Burcham's claim rests on the ground that with money which she obtained by inheritance she made her husband a loan, that he used this money in business, and that the assignment of the policy was an act on his part intended to secure her a preference, and to repay the loan. It may be conceded, as many of our cases indicate, that the effect of our Married Woman's Act is to validate such transactions between husband and wife; that when they occur they are to be measured according to the rules of law which govern similar transactions between strangers; that while it is true that the relationship existing between the parties shifts the burden of proof as to *bona fides*, and may raise other questions involving complications, still, when such exceptional facts arising out of the married relation are eliminated, the fundamental rules of law are the same, and a husband has the same right to prefer his wife as any other creditor, good faith being the main consideration for the courts. In order, however, for a wife to claim the advantage of such a conveyance, it is not sufficient for her to show that she has supplied her husband with money or property. The relationship of debtor and creditor must be established. The special findings in this case do not establish such a relationship. The finding merely is that "by the year 1871 she had received from her father's estate about $2,600, which was, immediately upon its receipt, turned over to her husband." The finding thus far is amply sus-

tained by the evidence; but it does not involve a finding that the "turning over" was by virtue of any contemporaneous agreement that it should be treated as a loan and repaid, with or without interest. There is a general finding for the plaintiff, and the evidence is not sufficient to conclusively show there was any such agreement. On the contrary, the almost irresistible inference is that the money was paid to the husband without any agreement, express or implied, and that there was no understanding in regard to its repayment until long afterwards, when the husband became involved in financial difficulties. It has been several times held that while such transactions between husband and wife, when conducted in good faith, will be sustained as against the creditors of the husband, there must, in order to support them, be shown that the transaction was a loan, and that there was an agreement to repay the money. (*Wake v. Griffin*, 9 Neb., 47; *Hoagland v. Wilson*, 15 Neb., 320.) Furthermore, the finding, supported by the evidence, is that "by the year 1871" Mrs. Burcham had received the money, and immediately on its receipt turned it over to her husband. Our Married Woman's Act took effect June 1, 1871. (Session Laws, 1871, p. 68.) Prior to the taking effect of that act the common law was in force, whereby the unity of husband and wife was recognized. Her chattels became his, and her choses in action became his when reduced to possession. This finding, then, must be taken to establish the fact that before the Married Woman's Act took effect the husband had obtained possession of these funds, and they were therefore his in law before the rights of married women were acquired by the act referred to. Without considering, therefore, the question of estoppel by reason of her permitting her husband to invest her money in his own name, and the contention that the other claimants to the fund had extended credit on the faith of his apparent ownership, we conclude that it was not shown that under the law existing at the time of the advancement, or by the facts surrounding the advancement, of the

money it was then intended or operated as a loan by the
wife to him. The assignment of the policy was, conse-
quently, voluntary and without consideration. It fol-
lows that she had no equity by virtue of the assignment
superior to the rights of those acquiring liens upon the
fund by virtue of debts owing from her husband. The
decree of the district court is right and is

AFFIRMED.