HENRY WEHNES ET AL., APPELLANTS, v. HENRY MARSH ET AL., APPELLEES.

FILED JANUARY 20, 1919. No. 20264.

1. **Contracts:** CONSIDERATION: FORBEARANCE TO SUE. Forbearance to sue, where no cause of action exists and the claim is groundless, is not a consideration to support a promise.

2. ———: IMPLIED CONTRACT: CONSIDERATION. Where the law implies a contract, a promise to do something else different from or in addition to that which the law implies is *nudum pactum*.

3. **Frauds, Statute of:** CONTRACT: PART PERFORMANCE. "Performance of services of such a character that their value cannot be estimated by a pecuniary standard, so that the court cannot restore the promisee to the situation in which he was when the contract was made, or compensate him in damages, is sufficient to take such an agreement out of the statute of frauds." *Teske v. Dittberner*, 70 Neb. 544.

4. ———: ———: ———. Where the services were not rendered in pursuance of an agreement made, and in reliance upon it, but had already been rendered at the time of entering into the agreement, the past performance of such services is not sufficient to take the agreement out of the statute of frauds.

APPEAL from the district court for Jefferson county; LEANDER M. PEMBERTON, JUDGE. *Affirmed.*

*John C. Hartigan* and *M. A. Hartigan,* for appellants.

*C. H. Denny* and *Hazlett & Jack, contra.*

CORNISH, J.

Plaintiffs ask specific performance of a contract for a two-sevenths interest in the estate of William Marsh, deceased, and assign error in the trial court's sustaining of a demurrer to their petition.

The petition shows that in 1870 Dora Wehnes, mother of the plaintiffs, then small children, having in her possession $420 of the $700 or $800, proceeds of the sale of the personal property of the estate of her deceased husband (which estate also included a 160-acre farm), married William Marsh father of defendants Marsh and a widower, and came to live with him on his homestead; that defendant Frank Marsh was born of the marriage, and the other defendants were then small children; that the homestead was but slightly improved, and with little stock upon it; "that the said Dora Wehnes turned over to the said William Marsh" the $420, above mentioned, "and which belonged to these plaintiffs and the said Dora Marsh;" that "William Marsh became and was a kind and considerate father to these plaintiffs;" that they continued to live at the home of William Marsh and their mother, working upon the lands in company with the other children, until they became of age, when they left to seek fortunes for themselves; that by reason of the profitable investment of the $420 and the aid furnished him by the children (including his own) and plaintiffs' mother, the said William Marsh, at the time the plaintiffs became of age, had accumulated a fortune of $30,000; that at that time the plaintiffs received their share of the proceeds of the sale of the real estate belonging to their father's estate, and, in company with their mother, desiring a complete settlement of affairs of their father's estate, requested William Marsh "to repay to the said plaintiffs the sum of four hundred twenty ($420) dollars, together with an equitable division of the profits that had accrued by reason of the judicious investment and the labors of these plaintiffs;" that William Marsh "recognized" that the $420 and the services rendered had been the

foundation of his fortune and entered into a verbal contract with the plaintiffs, agreeing that, to equalize the amount that the plaintiffs had received out of their father's estate, he would give to each of his children $1,500 out of his property; that the remainder of his property should remain intact, he and his wife to have the use of it during their lives, and that upon the death of William Marsh, in compensation for the said $420 and its profits and the labor of the plaintiffs upon the farm, and in consideration of the forbearance of the plaintiffs in not requiring any settlement with him, "all the estate which he should leave at the time of his death should be equally divided between the children of the said William Marsh and these plaintiffs, * * * share and share alike," to be paid out of his estate at the time of his death; that afterwards William Marsh gave each of his children $1,500; that the plaintiffs performed the said contract upon their part, permitting the said William Marsh to retain the $420 and accumulations thereof, and forbearing, in reliance upon such promise, an accounting or final settlement of the affairs of Fred Wehnes, deceased, their father; that on June 8, 1901, the mother, Dora Marsh, died; that William Marsh died in February, 1915; that in 1909 William Marsh made a will, attempting to dispose of all of his property, in disregard of the contract entered into with plaintiffs; that in making the will he was unduly influenced; that the defendants claim to be the owners of the estate of William Marsh. It is prayed that the defendants be held to hold the property in trust, so that the contract, under which two-sevenths of the same would go to the plaintiffs, may be specifically enforced.

The will, mentioned in the petition, is attached, showing that William Marsh, deceased, gave to each of the defendants, who are his heirs-at-law, one-fifth of his property, consisting of real estate and personal property.

We are of opinion that the trial judge did not err in sustaining the demurrer to the petition.

1.   The contract would seem to be without considera-
tion.   According to the petition, the services rendered
by the plaintiffs were performed as members of the
family of William Marsh and wife, without any word or
circumstance shown from which a presumption could
arise that either Marsh or the plaintiffs expected com-
pensation to be paid.   In such case, there is no liability
for compensation.   *Bell v. Rice,* 50 Neb. 547; *Pierce v.
Coffee,* 160 Ia. 30,

It is alleged that the $420 was "turned over" by Mrs.
Marsh to her second husband.   What part, if any, of it
belonged to the plaintiffs and what part to the mother
is not shown; nor that the husband knew plaintiffs
might be interested in it.   In the two years since their
father died, their portion of the $700 or $800, proceeds
of the sale of the personalty, might properly have been
expended by her in their behalf.   Prior to the married
women's act in 1871 (Laws 1871, p. 68), the wife's chat-
tels became those of the husband, and her choses in ac-
tion became his when reduced to possession; so that nei-
ther the mother nor the children, through her, could base
a claim upon the $420 turned over. *Eggleston v. Slusher,*
50 Neb. 83.   Forbearance to sue, where no cause of
action exists and the claim is groundless, is not a con-
sideration to support a promise.   *Palfrey v. Portland,
S. & P. R. Co.,* 86 Mass. 55; *Dunham v. Johnson,* 135
Mass. 310; *Cline & Co. v. Templeton,* 78 Ky. 550;
*Harris v. Cassady,* 107 Ind. 158.

2.  Assuming that when plaintiffs became 21 years
old the situation was such that the law would imply a
promise in favor of the plaintiffs, the question arises:
What promise would the law imply?   It would be, first,
a promise to pay reasonable compensation for the
services rendered; and, second, a return of the $420 and
interest which Marsh "took over" from his wife. In the
absence of some agreement between Marsh and his wife
that he would hold the money and invest it for her and
the children, the law will not imply it.   Where the law
implies a contract, a promise to do something else

different from or in addition to that which the law implies is *nudum pactum*. Beach, Modern Law of Contracts, sec. 161; *Merrick v. Giddings,* 12 D. C. 394; *Murtha v. Donohoo,* 149 Wis. 481, 41 L. R. A. n. s. 246; Pollock (Wald's) Contracts (3d ed.) pp. 199, 200.

Where the claim or liability is one which can be liquidated in money, an action in equity for specific performance, such as we have here, does not lie. *Kofka v. Rosicky,* 41 Neb. 328, 350; *Teske v. Dittberner,* 70 Neb. 544; *Baumann v. Kusian,* 164 Cal. 582; *Haubrich v. Haubrich,* 118 Minn. 394; *Grindling v. Rehyl,* 149 Mich. 641, 15 L. R. A. n. s. 466, and note; *Kelly v. Kelly,* 54 Mich. 30; *Cooper v. Colson,* 66 N. J. Eq. 328.

3. Aside from the above consideration, however, there is another reason why plaintiffs cannot recover in this action. Section 2623, Rev. St. 1913, provides that no estate or interest in land, such as is sought here, can be created unless by deed of conveyance in writing, subscribed by the party. The agreement alleged was oral; therefore void if within the statute. The statute is intended to protect valuable property and estates from fraudulent claims. Certain exceptions, or apparent exceptions, to the provision may arise, such as where the promisee is to occupy some peculiar relation to the promisor; agrees to render a service, to be recompensed upon death of the promisor, where it is apparent that the service was not intended to be and could not be recompensed in money. In such cases, where the parties cannot be placed *in statu quo,* and no adequate compensation in damages could be allowed, the courts, exercising a sound discretion, the evidence being clear and unequivocal, may allow specific performance of the oral contract. In such cases, we say that not to enforce the contract would amount to a fraud upon the promisee. The right to the specific performance results from the acts done in the execution of the contract, referable to it. In the case in hand, the consideration of the plaintiffs, if any existed, was a past consideration. The services had been performed when the contract was

made. The situation and relation of the parties as to the future were not altered. We know of no decision where a court has ordered specific performance when the services were not rendered in pursuance of the contract, but before it was made, and were not accompanied by possession. *Teske v. Dittberner, supra; Kofka v. Rosicky, supra; Riddell v. Riddell,* 70 Neb. 472; *Grindling v. Rehyl, supra; Price v. Lloyd,* 31 Utah, 86, 8 L. R. A. n. s. 870; *Haubrich v. Haubrich, supra; Flood v. Templeton,* 148 Cal. 374; *Robertson v. Corcoran,* 125 Minn. 118; *Oles v. Wilson,* 57 Colo. 246; *Hamlin v. Stevens,* 177 N. Y. 39.

Plaintiffs cite several Nebraska cases. None of them, we believe, is contrary to the rule as above stated. The statute is a beneficial one to both the living and the dead and should not be emasculated by judicial interpretations. Especially should estates after death not be subject to a fraudulent diversion from their legitimate distribution by reason of oral testimony, possibly influenced or changed by greed, sympathy, or uncertain memory of long-past conversations.

AFFIRMED.

LETTON, ROSE and SEDGWICK, JJ., not sitting.