WESTERN UNION TELEGRAPH COMPANY, APPELLANT, v. DODGE COUNTY, APPELLEE.*

FILED NOVEMBER 9, 1907.   No. 14,922.

1. Taxation: TELEGRAPH COMPANIES: ASSESSMENT. In assessing the property of a telegraph company having property in more than one state, the value of the whole property as an entirety should be considered, and the relation which the value of the property in the taxing district under consideration bears to the value of the entire property should also be considered.

2. ———: ———: ———. In arriving at the value of the property of a telegraph company in a taxing district, the total gross and net receipts of the system as a whole, as well as in the particular district, may be considered, and so also may the amount of the company's stock and bonds and the market value thereof.

3. ———: BOARD OF EQUALIZATION: EVIDENCE. Equalization boards of a taxing district may obtain information of the value of the taxable property under consideration from the best and most reliable source at their command, and the strict rules of evidence applied by the courts in ordinary cases are not applicable to the evidence offered or received by such boards. The district court on appeal may receive proof of any pertinent fact tending to show the value of the property.

4. Evidence examined, and *held* sufficient to sustain the finding of the district court.

APPEAL from the district court for Dodge county: JAMES G. REEDER, JUDGE. *Affirmed.*

* Rehearing allowed.   See opinion, p. 23, *post.*

*Courtright & Sidner,* for appellant.

*John W. Graham, contra.*

DUFFIE, C.

The Western Union Telegraph Company made a return to the county assessor of Dodge county showing the actual value of its property, including franchises, in said county on the 1st day of April, 1905, to be $9,281.20, and assessed valuation $1,856.24. The actual valuation was raised by the board of supervisors to $46,406 after a hearing at which the company was represented. Thereupon the company appealed from the action of the board to the district court. Upon the trial the court fixed the actual value of said property at $54 a wire mile, or $40,500 for the entire property. From this finding and judgment of the district court the company has appealed.

The court found specially, first, that the appellant has 80 miles of pole lines and 750 miles of wire in Dodge county; second, that there are 1,200,000 miles of wire in the United States owned by appellant, and that the average value throughout the United States is $54 a wire mile, including franchises; third, that the gross earnings of said system in Nebraska from all sources are $10.50 a wire mile, and the net earnings for said system in said state are $1.36 a wire mile; fourth, that the value of the tangible property of appellant in Dodge county is $12,850; fifth, that the actual value of appellant's property in Dodge county subject to taxation, including franchise value, should be $54 a wire mile, or $40,500. It is insisted by appellant that as the value of its tangible property in Dodge county is but $12,850, or $17.13 a wire mile, that the difference between this sum and $54 a wire mile was fixed by the court as the franchise value of plaintiff's property. We cannot agree that this is entirely true. The court, in arriving at the value of appellant's property, took evidence showing the value of its stock and bonds, and this showed the average value per

pole mile of the entire system to be $610.17. Second, evidence was taken of the net earnings of the company. This showed the average value per pole mile capitalized on a 4 per cent. basis to be $989.15; on a 5 per cent. basis, $791.32; on a 6 per cent. basis, $659.43. Evidence was also taken of the asset or cost value of all appellant's property embraced in its whole system. This showed the average value per pole mile to be $685.31, and the cost value per pole mile of its system in the United States, including cable and foreign lines, makes the average value per wire mile in the United States $54. If either or all of these methods were proper in arriving at the value of appellant's property in Dodge county, the first system would give for 80 pole miles, at $610.17 a mile, a gross valuation of $48,813.60. The second method would give a gross valuation of $52,754.40. The third method a gross valuation of $54,824.80; and the fourth method 750 wire miles, at $54 a mile, gives a gross valuation of $40,500, or the sum found by the court. Section 10477, Ann. St., provides that the gross receipts of express, telegraph and telephone companies shall represent the franchise value of such companies, which shall not be otherwise assessed. This provision of the statute was held unconstitutional in *Western Union T. Co. v. City of Omaha*, 73 Neb. 527, and the assessing authorities are now driven to some other method of ascertaining franchise values. It has long been the rule, not only here, but elsewhere, that in assessing railroad and telegraph property the entire property of the company is to be taken into consideration. In *State v. Savage*, 65 Neb. 714, it is said: "In assessing railroad and telegraph property, it is the duty of the state board of equalization to secure all reasonable and necessary reliable information relative to the value of the entire property of each corporation assessed, and assess such property as a unit or as one property. * * * Where railroad and telegraph properties are situated in more than one state, it is necessary to consider and determine the value of the whole property, wherever situated, as an entirety,

and then determine what proportion of the whole property is situated and used in this state and subject to taxation therein; the relation such part bears to the whole property as to its value being the basis on which the assessment is to be made. The market value of the stocks and bonds of a railroad corporation is an important factor, with other pertinent information, by which to determine the fair-cash value of the property assessed which is represented by such stocks and bonds. The earnings of a railroad company is evidence of a most important character in determining the true value of the property from which the earnings accrue, and is one of the chief elements which give value to the property, and should be considered in determining the value for assessment purposes of the entire property which is assessed."

From the above quotation it will be seen that the value of the entire property considered as a whole, the value of its stock and bonds and the amount of its earnings, should be considered in arriving at the value of the property. It is true that no expert who had knowledge of the value of appellant's entire property testified upon the trial, but an expert accountant was called, who gave a statement of the amount and value of the stock and bonds of the appellant corporation on April 1, 1905, basing his computation upon figures taken from Poor's Manual and other standard publications. Objection is made to this upon the ground that such evidence was incompetent. Assessors and equalization boards must act upon the best and most reliable information at their command. Poor's Manual is resorted to by the commercial world as an authority upon the amount and value of the stocks and bonds of the several leading corporations in this country, and whatever is good evidence for those dealing in such stocks and bonds cannot be regarded as either immaterial or incompetent for the taxing authorities to act upon. Boards of equalization are not governed in their investigation of the values of taxable property by the strict rules of evidence applied by courts of law in the trial of ordi-

nary cases, and upon appeal from their findings the court may receive evidence of any pertinent fact tending to show the true value of the property. On April 1, 1903, the Western Union Telegraph Company filed with the auditor of state a report of the taxable value of its property in Dodge county. This is the last report of values made by the company previous to the return made to the assessor of Dodge county, and it shows 77.69 pole miles, of the value of $9,376.90. To the introduction of this report the appellant objected, and it now insists that the evidence is incompetent. We think the presumption must obtain that the physical condition of appellant's property in Dodge county was not allowed to deteriorate between 1903 and 1905, and certainly its value as an income producer has not depreciated during the past two or three years of commercial activity which has pervaded the whole country. It is so well known that the courts of the state will take judicial notice of the fact that previous to the enactment of our present revenue law the assessed value placed on taxable property was many times below its actual value. Under our present system the true actual value is returned, and 20 per cent. of this is taken as the assessed value. Twenty per cent. of the actual value found by the court in the case under consideration would place the assessed or taxable value of the appellant's property in Dodge county at about the figure placed upon it by appellant's officers in 1903. This evidence, while not of the most satisfactory character, had some tendency to show the taxable value of the property in the estimation of the officers of the company and was properly admitted.

Aside from this, we cannot say that the value fixed by the court is not fair and just. It may be true that there are many miles of the lines owned by the company of greater value physically and as an income producer than the same number of miles in Dodge county. At the same time there must be as great or a greater number of miles of much less value, and we cannot say that the board of

equalization or the court did not arrive at a correct determination in placing the value at that figure it did.

Discovering no reversible error in the record, we recommend an affirmance of the judgment.

EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed July 17, 1908. *Former judgment of affirmance adhered to:*

1. Taxation: TELEGRAPH COMPANIES: ASSESSMENT. The net earnings of a telegraph company for a single year standing alone is not a proper criterion by which to determine the actual value of its telegraph system.

2. ———: ———: ———. The income derived from messages sent from and received at stations in a given district, which comprises only a part of a great telegraph system, is not the proper measure of the gross earnings of that part of the system within the district, where the lines within the district are used for the transmission of messages having neither origin nor destination in the district.

3. ———: ———: ———. The fact that the net earnings of a telegraph company are 13 per cent. of its gross earnings does not justify the conclusion that the net earnings of a particular district, comprising only a part of the telegraph system, are but 13 per cent. of the gross earnings of such part of the system, in the absence of evidence that the ratio of the net earnings to the gross earnings within the given district is the same as that for the entire system.

4. Evidence: BOARD OF EQUALIZATION: PRESUMPTION. The presumption obtains that a board of equalization has faithfully performed its official duties, and that in making an assessment it acted upon sufficient competent evidence to justify its action.

5. Taxation: BOARD OF EQUALIZATION: APPEAL: BURDEN OF PROOF. Where a taxpayer appeals from the action of the board of equalization in fixing the value of his property for taxation, the burden is upon the appellant to show that the action of the board is erroneous.

6. Former opinion in this case, *ante,* p. 18, adhered to.

GOOD, C.

This is a rehearing of the case reported *ante*, p. 18. The appellant in asking for the rehearing acquiesced in all the principles of law laid down in the former opinion, but contended that this court, as well as the district court, erred in applying the law to the facts as disclosed by the record. The district court found that the appellant had 80 miles of pole lines and 750 miles of wire in Dodge county; that it had 1,200,000 miles of wire in the United States, and that the average value throughout the United States was $54 a wire mile, including franchise; that the gross earnings of the system in Nebraska were $10.50 a wire mile. It also found the value of the tangible property of the appellant in Dodge county was $12,850, and that the actual value of appellant's property in Dodge county, subject to taxation, including franchise value, was $54 a wire mile, or $40,500. Appellant complains only of the finding which fixed the value of its lines in Dodge county at $40,500, or $54 a wire mile, and contends that the evidence does not warrant this finding. It further contends that the evidence does not warrant the finding of the value of the Dodge county lines to exceed $22 a wire mile. The evidence shows the gross and net earnings of the entire system in the United States to be $24 and $3.24, respectively, a wire mile, and that the earning capacity of the lines in Dodge county is a fair average for the state of Nebraska. Appellant urges that, because the earnings per wire mile in Dodge county are far below the average earnings per wire mile for its entire system in the United States, the court should not have found the value per wire mile in Dodge county equal to the average value per wire mile for its entire system, but should have found the value of the lines in Dodge county to be in such proportion to the average value per wire mile of the whole system as the net earnings of the Dodge county lines bore to the average net earnings per wire mile for the system as an entirety. The evidence shows the value of the tangible property of

the appellant in Dodge county to be a trifle over $17 a wire mile, and the district court in fixing the actual value at $54 a wire mile clearly included nearly $37 a wire mile as representing the value of the intangible property. The record is barren of any fact which would show the value of the tangible property of appellant's entire system in the United States. We are unable to ascertain from the record what is the value of its tangible property for the entire system per wire mile, or what proportion of the value of its entire system is represented by tangible, or what proportion by intangible, property. We cannot say whether the proportion of tangible property in Nebraska is greater or less than in the entire system. Appellant's argument that its property was overvalued by the district court rests largely upon one factor, namely, that the alleged net earnings per wire mile in Nebraska are very much less than the net earnings per wire mile for the entire system. If the evidence established the facts contended for by the appellant, we concede that the factor of earning capacity would be a potent one in fixing the actual value of the lines in Nebraska.

We find ourselves unable to view the record as does the appellant. In the first place, the testimony as to the earnings relates to but a single year. There are many reasons which might affect the relative earnings of the different parts of a vast telegraph system, and the earnings of each part might vary from year to year. The expenses of operation are likely to vary, and the net earnings for the entire system might be very small for one year and large the next. A particular district might show a loss for one year and a large profit for the next. So it seems clear that the net earnings for a single year would not be a proper criterion for determining the value of a telegraph system or for a particular part thereof. There is still a greater obstacle to appellant's contention. We do not think there is competent evidence in the record from which either the gross or net earnings of the lines in Nebraska can be ascertained. Appellant's witness testified

that the gross and net earnings of the lines in Nebraska were $10.50 and $1.36, respectively, a wire mile. But upon what does he base this testimony? He obtains the gross earnings by taking the income from messages which have been either sent from or to a station in Nebraska. No account is taken of the transcontinental messages which go over the wires in Nebraska, which have neither origin nor destination in Nebraska. We are unable to say that the income from messages going from or coming to Nebraska stations represents the gross earnings of the wires in Nebraska. To illustrate: Suppose appellant has a line of poles carrying a dozen or more wires across a district in which there is no telegraph station; the wires may be in constant use and yielding a large profit, yet, according to appellant's theory, there would be neither net nor gross earnings in this district, because no messages were sent from or received within the district. In addition to this, we think it is inferable from the evidence that the witness in fixing the gross earnings for Nebraska lines took into account only the money received in the stations in Nebraska. There is nothing in the record to show what proportion of the messages sent from Nebraska were prepaid, nor what proportion of the messages received were collected for in this state. Under these circumstances, the testimony of the witness as to the gross earnings in Nebraska was of no practical value. His testimony as to net earnings presents a greater state of chaos. It was shown that for one year the net earnings of the entire system were 13 per cent. of the gross earnings. There is no evidence to show that this proportion of the gross earnings would be applicable to Nebraska. Nor is there anything in the record from which it can be determined that this percentage would hold good for a series of years. We think it is apparent that the witness assumed that the percentage for one year was applicable for Nebraska, and used that as a basis for determining the net earnings of the lines in Nebraska for one year. Appellant has attempted, therefore, to fix the net earnings of the lines in

Nebraska by taking a certain percentage of the alleged gross income. The gross income taken as a basis is not shown to be correct, nor is the percentage shown to be applicable to the Nebraska lines. It amounts to this: That the witness has multiplied one error by another. No one will assume that the result is correct.

Certain other facts disclosed by the record, while not conclusive, have some persuasive force which tends to sustain the findings of the district court in fixing $54 a wire mile as the value of the system in Dodge county. It is shown that the average number of wires per pole in the United States is something less than six, while in Dodge county the number of wires per pole averages a little more than nine. We think it fair to assume that a business corporation like the appellant would not string nine or more wires to its system of poles if five or six were sufficient to transact its business. If five or six wires per pole per mile for the entire system produces a net income of $3.12 a wire mile, it would appear that a system where nine or more wires are used would produce as great, if not a greater, income than a system of a less number of wires per pole. It may be that the evidence in the record is not sufficient to affirmatively show that the value of appellant's plant in Dodge county is $54 a wire mile, as found by the trial court, but of this the appellant is not entitled to complain. The rule of law seems to be quite well settled that, in the absence of evidence to the contrary, the presumption is that public officials faithfully and legally perform their legal duties, and that in making an assessment the board of equalization proceeded upon sufficient and competent evidence to justify its action. *State v. Western Union T. Co.,* 96 Minn. 13, and cases there cited; *State v. Savage,* 65 Neb. 714. In *Lancaster County v. Whedon,* 76 Neb. 753, it was held that, where a taxpayer appeals from the action of the board of equalization in the matter of assessment of property for taxation, the burden is upon the appellant to show that the decision of the board is erroneous. It would follow that the

presumption obtains that the value fixed by the board of equalization of Dodge county was correct, in the absence of evidence to the contrary. The burden of proof being upon the appellant to satisfy the trial court that the board of equalization had erred in fixing the valuation of its property, the appellant is not in position to complain, unless it has produced evidence to overcome the presumption. As the district court fixed a lower valuation upon appellant's property than the valuation fixed by the board of equalization, the error, if any, was against the appellee, and not against the appellant.

We have been asked to formulate and state a plan for determining the value of the property of telegraph companies for assessment in this state. The law requires that their property shall be listed at its actual value, and, where the legislature has not formulated or fixed any plan by which such value may be ascertained, it would appear that any course is open to the parties interested to pursue any plan and offer any evidence whereby the actual value may be determined. It is not within the province of the court to lay down or formulate any rule which must be followed for the purpose of ascertaining the actual value for purposes of assessment. To do so would be to usurp the functions of the legislative branch of the government.

The record fails to disclose any error of the district court prejudicial to the appellant. We recommend that the former opinion be adhered to, and that the judgment of the district court be affirmed.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the former opinion in this case is adhered to, and the judgment of the district court is

AFFIRMED.