MERIDIAN HIGHWAY BRIDGE COMPANY, APPELLANT, V.
CEDAR COUNTY, APPELLEE.

FILED JUNE 15, 1928.   No. 25945.

*B. Ready & Son,* for appellant.

*Clarence E. Haley* and *R. J. Millard, contra.*

Heard before Goss, C. J., ROSE, DEAN, THOMPSON, EBERLY and HOWELL, JJ., and REDICK, District Judge.

Goss, C. J.

The Bridge Company appeals from an order fixing the valuation of the Meridian Highway bridge in Cedar county, Nebraska, at $400,000 for purposes of taxation for the year 1926.

The Cedar county assessor fixed the valuation at said sum and, on a hearing before the board of equalization of the county, wherein the Bridge Company protested that the assessment was too high and requested an adjustment, the board made an order adhering to the assessment; and on appeal and hearing before the district court the objections of the Bridge Company were overruled and the valuation by the board of equalization was sustained and approved. On the overruling of a motion for a new trial the case was brought here for review. In addition to the conventional errors that the findings are not supported by the evidence, and are contrary to the evidence and to law, and

errors of law occurring at the trial, it is assigned that the income from the bridge was not considered in fixing its value and that the value of the bridge stock, likewise, was not considered.

It is alleged in the petition, and admitted in the answer, that the Meridian Highway Bridge Company is a corporation, with its principal place of business in Yankton, South Dakota; that on October 16, 1924, the bridge in question was completed and opened for public travel across the Missouri river, with its northern terminal in Yankton and its southern terminal in precinct No. 2 in Cedar county; that 70 per cent. of the bridge is in Cedar county; that for the year 1926 the county assessor of Cedar county valued that part of the bridge in Cedar county at $400,000, which the company alleged to be excessive and to which it filed its objection before the board of equalization, and, upon a hearing on June 19, 1926, the board of equalization overruled the objections and fixed that valuation; and that said bridge was built to be used as a combined railroad and wagon bridge. The petition alleged that, to give the bridge the proper strength for a railroad bridge, it was necessary to expend three times the amount of money necessary for a wagon bridge, and that the expenditure made for railroad purposes is bringing no income whatever and there are no prospects, even remote, of its being used for railroad purposes.

The evidence is not as complete as we would like to have it. No testimony was offered upon behalf of the county. The entire bill of exceptions, including two exhibits, consists of eleven pages.

There was testimony showing that the bridge cost the sum of $1,169,367.17. Just to give something of a view of its liabilities, we learn, from a statement introduced in evidence, that it has bonds outstanding of $270,000, capital stock $823,325, undivided profits $13,615.24, and reserved for depreciation $21,925.64; its operating statement for the year 1925 shows that its chief receipts are bridge tolls, $62,478.80, and its principal disbursements are, ex-

penses $19,324.26, interest on bonds $17,100, depreciation of bridge $17,540.51. These items account for all but a few hundreds of its receipts and disbursements. The total receipts being $63,051.60 and disbursements $55,005.80, according to the statement, the net profit remaining was $8,045.80.

The county assessor was made a witness for the plaintiff. His testimony in full is as follows: "Q. Mr. Fornisch, you are the present county assessor of Cedar county? A. I am. Q. And as such assessor you fixed the value of the Meridian Highway bridge, did you? A. Yes, sir. Q. At $400,000? A. Yes, sir. Q. And from that you, or rather the board of equalization, made an assessment, did they not? A. Yes, sir. Q. In fixing the valuation at $400,000, did you or the board of equalization take into consideration the earnings of the bridge? A. We did not."

Cross-examination. "Q. What did you take into consideration in fixing the value? A. I took nothing but the physical valuation. Q. That is what you did in this case? A. Yes."

There is nothing shown in the evidence as to the amount of taxes that would be produced by the valuation fixed. At the rate of state taxes for the year 1928, the state taxes would be $1,500, county taxes are usually a like amount, and school taxes may roughly be estimated at an amount equal to both the county and state. So, in the ordinary course, merely for the purpose of throwing some light on the consideration, it may be said that the total taxes on the valuation fixed would be in round numbers approximately $6,000 for the one year in which the assessment in question would be in effect.

Under section 5820, Comp. St. 1922, "All property in this state, not expressly exempt therefrom, shall be subject to taxation, and shall be valued and assessed at its actual value. 'Actual value,' as used in this act, shall mean its value in the market in the ordinary course of trade." It is rather difficult to estimate the value of property like that of the bridge in question in the market in the ordinary

course of trade, because there is so little trading in or selling of such properties. Other tests have to be applied than those arrived at by actual barter.

Just what was meant by the assessor himself in his expression "physical valuation" is not explained. In connection with the context, it is quite likely he meant the actual valuation as he viewed it in his capacity as assessor. He testifies that he and the board did not take into consideration the earnings of the bridge. There is nothing in the evidence to show either that these earnings or the value of the stock in the company were or were not brought to the attention of the board of equalization in their hearing. It does not matter much, as the question here is as to the actual value of the property for taxation purposes. The reasons that guided the assessor and the board might be helpful in determining the action of the court.

However, let us analyze the matter of capital, earnings and net income as if they had been presented to the board of equalization. Over $800,000 of the cost value of the bridge was in Cedar county. This, as we understand it, was the first valuation for purposes of taxation since its completion. For potential uses it was a railroad bridge as well as a bridge for vehicles. The event has proved that, up to the time of trial, the owners had no contract for its use by railroad. It actually cost a total of about $800,000 more than it would have cost for the use of vehicles alone. On what needed to have been a cost of less than $400,000, it had a gross operating income of $62,478.80, with expenses of $19,324.26. This would have left a fair margin for a reasonable return in a formative year on the necessary capitalization for a vehicle bridge. For we may assume that toll bridges, like most new ventures, require publicity and advertisement before they become known. For the purpose of testing this it would be interesting to compare the income of 1925, furnished at the trial, which took place on January 14, 1927, with that of 1926. We are without that aid, as no inquiry was made by either party as to income for 1926 for what light it might throw upon

the valuation fixed by the board in the spring of 1926. The board had a right to attribute some actual value to that portion of the bridge devised and intended for railroad purposes. It could not be said in 1926 that it was not of some substantial value. To compare it with property more within common knowledge we might consider an alfalfa field, which in the year of catching a crop is of comparatively little use or value; or an office building, which for the first year, or often longer, produces a small net income. And yet will any one say that neither the field nor the building shall be taxed so low as to bear no fair relation to its ultimate value, based on its intended use? So, attributing some actual value to that portion of the bridge erected with special reference to railroad uses and considering the earnings in the first year after the opening of the bridge, there was a reasonable basis for the actual value of $400,000 as fixed by the board and approved by the district court. There was some testimony of the president of the company that in the past some of the stock had sold for $20 to $25 a share, but this would not be indicative alone of a valuation of the property so very far different from the valuation contended for by the county.

We are loath to interfere with the sound discretion reposed in boards of equalization to value real property at its actual value. Where the action of such a board does not appear to have been exercised arbitrarily nor to have omitted to take into consideration the proper and necessary elements to be considered in fixing the value, its action ought not to be disturbed. Here the valuation might have been rather high for the particular year, and yet we do not feel disposed to find, on what evidence was submitted to us, that it was. We think the proper rule is that the sound discretion reposed in the board of equalization to hear complaints and determine on the valuation of property will not be disturbed by this court, unless so manifestly wrong that reasonable minds cannot differ thereon.

This principle is found in *Field v. Lincoln Traction Co.*, 74 Neb. 418, and *Woods v. Lincoln Gas & Electric Light Co.*, 74 Neb. 526.

We conclude that the judgment of the district court is right and it is

AFFIRMED.