HOWARD KENNEDY, TRUSTEE, APPELLANT, V. BUFFALO COUN-
TY, APPELLEE.

279 N. W. 464

FILED MAY 6, 1938. No. 30271.

*King & Haggart* and *M. H. Worlock,* for appellant.

*Guy N. Henninger* and *George A. Munro, contra.*

Heard before GOSS, C. J., EBERLY, PAINE, CARTER and
and MESSMORE, JJ., and LIGHTNER and SPEAR, District
Judges.

MESSMORE, J.

Plaintiff, trustee for certain bondholders under a mort-
gage which was foreclosed and the land bid in by the
trustee, appeals from a decree and judgment of the dis-
trict court for Buffalo county, wherein said court dis-
missed plaintiff's petition, finding that the valuations placed
for assessment purposes for the year 1936 upon approxi-
mately 700 acres of land situated within Kearney School

District No. 7, about 400 acres of which are within the city limits of Kearney, were not excessive, in comparison with the valuation of other lands of similar character lying within Kearney School District No. 7, or situated adjacent thereto.

The petition of plaintiff and answer of defendant properly present the issues for this court's determination. The case is tried *de novo* upon an independent investigation of the record and the law applicable thereto, and presents primarily a question of fact. Plaintiff sets out four paragraphs in his brief wherein he contends the trial court erred. Paragraphs 1, 3 and 4 are to the effect that the evidence fails to support the findings and decree of the trial court. Paragraph 2 relates to the overruling of paragraphs 7 and 8 of plaintiff's motion for a new trial, respecting comparative tax burdens, as follows: "That the court erred in finding that the board of equalization took into consideration the comparative tax burden upon part of the plaintiff's land and that of other land outside District No. 7;" and "That the court erred in finding that there exist differences in productivity, location, or other factors sufficient to account for the differences in valuation and tax burden between the plaintiff's land and other comparable land." This alleged error refers to the insufficiency of the evidence to support the findings and decree of the trial court. All of the aforementioned errors relate to questions of fact which must be determined from the evidence.

The evidence is, for the most part, directed to the value of the land in question and of other lands in School District No. 7, in School District No. 114 and in School District No. 12, and directed mostly to the comparison of values, the productivity of said lands, for the purposes for which they are used, and all matters generally that pertain to their valuation, the evidence being largely opinions of experts.

The lands involved in this proceeding consist of the north half of section 3 and 122 acres of pasture land in section 34, within the city limits of Kearney, Nebraska,

in School District No. 7. The south half of section 3 is within School District No. 7, but outside of the city limits. School District No. 7 extends a mile and a half west of section 3; School District Nos. 114 and 12 lie further west. The average assessed valuation, as testified to by W. R. King, of land in School District No. 7, consisting of 16 tracts as shown by exhibit 1, which is a map received in evidence, is $48.30 an acre; the average assessed valuation of 11 tracts located in School District No. 114 is $39 an acre; and of 20 tracts in School District No. 12 is $45 an acre. The average tax per acre on lands in School District No. 7 is $1.76; in School District No. 114 is 56 cents, and in School District No. 12 is 60 cents, with no prospects of reduction in valuation in School District No. 7 in the immediate future. The valuation of lands appearing on exhibit 1 has not been materially reduced since 1933. The aforementioned figures were computed only on agricultural land.

The evidence of the plaintiff is to the effect that all of the plaintiff's land is used exclusively for agricultural purposes, excluding a small acreage out of the center of section 3 on the north side containing six acres. The plaintiff's lands are described and shown in his brief, together with the number of acres, the value per acre, exclusive of improvements, the 1936 mill levy, and the tax per acre, as follows:

|  | Acres | Value per acre | 1936 Mill levy | Tax per acre |
|---|---|---|---|---|
| Tract I, S.½ of section 3 | 303 | $55.27 | 31.54 | $1.74 |
| Tract II, N.½ of section 3 | 218 | 74.17 | 42.686 | 3.31 |
| Tract III, Villa lots | 39 | 175.00 | 42.686 | 7.85 |
| Tract IV, South of Villa lots | 12 | 90.00 | 42.686 | 4.02 |
| Tract V, Around improvements | 11.51 | 71.50 | 42.686 | 3.17 |
| Tract VI, Pasture | 122 | 20.00 | 42.686 | .89 |

Tract III of plaintiff's land, as set out above, carries a tax burden of $7.85 an acre. This land was platted for residence lots. There is a tourist camp on a part thereof. Its location is advantageous for suburban property. The evidence discloses that the lots have not sold to any extent since they were platted. The plaintiff's land has the advantage of fire and police protection from the city of Kearney, of electric lights along the highway, free delivery service by the merchants of the city; the facilities of modern, well-equipped junior and senior high schools and transportation to and from school paid by the district. The lands, compared by plaintiff with the land here involved, are outside of School District No. 7. A brief summary of some of the expert testimony in this respect may be advantageous, and follows:

The F. L. Robinson land is valued at $43.91 an acre, exclusive of improvements; the 1936 mill levy was 14.6 mills and the tax per acre was 64 cents. The west half of this land is very choice and its distance from section 3 is a mile and a half. The Mansfield land, considered as good land as plaintiff's, and consisting of 319 acres, is valued at $40.46 an acre, exclusive of improvements, with 14.6-mill levy for 1936; tax per acre 59 cents; distance from section 3 is three miles. The Roy Knapp land, considered by plaintiff's witness as choice, if not the best land in the county, consisting of 147 acres, is valued at $45.60 an acre, exclusive of improvements, with a 14.6-mill levy for 1936; tax per acre 67 cents; distance from section 3 is 3½ miles. The E. S. Kentner land, which is valuable land, and whose productivity and fertility are analogous to plaintiff's land, consists of 158 acres, valued at $37.47 an acre, exclusive of improvements, with a 14.28-mill levy, with a tax burden per acre of 54 cents; distance from section 3 is four miles. There are other comparisons in the record of plaintiff's land with land outside of School District No. 7, with the same mill levies, and where the highest range of tax per acre is 78 cents. Plaintiff's land carries a perpetual water right of the value of $1.50 an acre per year, which must

be taken into consideration, together with other evidence respecting plaintiff's land, as hereinbefore set out.

The values placed on plaintiff's land, as reflected by the testimony of the defendants, and referring to the tracts as set out herein, are as follows: On tract I, from $70 to $100 an acre; on tract II, from $125 to $150 an acre; on tract III, from $250 to $300 an acre; on tract IV, $150 an acre; on tract V, from $120 to $150 an acre; on tract VI, from $35 to $40 an acre. The assessed valuation per acre on tract I is $55.27; on tract II $74.17; on tract III $175; on tract IV $90; on tract V $71.50, and on tract VI $20. There was a slight reduction in valuation for tax purposes on 122 acres of pasture land which is tract VI.

The evidence of the plaintiff is to the effect that the tax burden on the land in the north half of section 3 is $3.31 an acre, which, compared with the tax on the Roy Knapp land of 67 cents an acre, leaves a difference of $2.64 an acre in taxes, reducing the income from the land in section 3 that much less than it does on the Knapp land; that, with reference to the market value of the land in section 3, as compared with the Knapp land, under present conditions, investors figure 5 per cent. interest on the investment in a speculative buying of land; that, figuring the land in section 3, capitalized on a basis of 5 per cent. interest, makes a difference of $52 an acre in the value of the land in section 3, as compared with the Knapp land, which would require that the land in section 3 make interest on $52 an acre more than the Knapp land, to make the same return as on the Knapp land; and, with respect to the Mansfield land, on $54 an acre. Several comparisons are made respecting the value of the south half of section 3. This part of section 3 is assessed at $55.27 an acre, with a tax burden of $1.74 an acre, and comparing it with the Carey land, which is assessed at $49.05 an acre, with a tax burden of 70 cents, makes a difference of $1.04 an acre. The same comparison may be made with respect to lowering of value of the south half of section 3 as given in the analysis herein as to the north half of said section. It is contended

that loan companies will not make a loan on land on which the tax burden is more than $1.50 an acre. On the north end of section 3 is what is known as the Villa lots,—39 or 40 lots of one acre each,—which plaintiff claims are used for agricultural purposes and farmed with the balance of the land. There are no fences or dividing marks segregating this land from the balance of plaintiff's land. These lots consist each of one acre, assessed at $175, the tax burden being $7.85 an acre. Two of these lots sold for $700 and one of them for $250. Other comparisons are made similar to those given above, all of which are shown on exhibit 1 and compared in the briefs and extensively in the evidence.

The trial judge, who had been acquainted with this land for 50 years, personally inspected the land prior to making his decision in this case. The matter was heard originally before the board of equalization in Buffalo county, and while it is true that there is an open admission in the record, so far as certain members of the board of equalization are concerned, that certain lands are not assessed high enough, we take cognizance of the value of all lands and the tax burden thereon, as portrayed by exhibit 1, and as testified to by the experts, and that the advantages in location, the fire and police protection, school facilities and transportation, and favorable rental terms are items to be considered in fixing the assessed valuation of lands.

In reference to weighing conflicting testimony in equity cases, the court will consider the fact that the trial judge saw the witnesses, their general demeanor while testifying, and reached a conclusion as to which testimony was the more credible. In this connection see *Johnson v. Erickson,* 110 Neb. 511, 194 N. W. 670; *Ellingwood v. Schellberg,* 121 Neb. 207, 236 N. W. 451; *Eichholz v. Luikart,* 128 Neb. 368, 258 N. W. 869; *Cunningham v. Armour & Co.,* 133 Neb. 598, 276 N. W. 393. In the latter case it was held: "Where the evidence is conflicting and cannot be reconciled, this court, upon a trial *de novo,* * * * will consider the fact that the district court observed the demeanor of witnesses

and gave credence to the testimony of some rather than to the contradictory testimony of others." This holding was quoted in paragraph 5 of the syllabus in *Farmers Elevator Co. v. Peck, ante,* p. 305, 278 N. W. 499.

On the question of discretion of a board of equalization, this court held in *Meridian Highway Bridge Co. v. Cedar County,* 117 Neb. 214, 220 N. W. 241: "The sound discretion reposed in the board of equalization to hear and determine the valuation of property will not be disturbed by this court, unless so manifestly wrong that reasonable minds cannot differ thereon."

In *First Nat. Bank of Blue Hill v. Webster County,* 77 Neb. 815, 113 N. W. 190, we held: "The assessment of property for the purpose of taxation as ultimately fixed by the board of equalization is final, except upon appeal to the district court, and should not be disturbed on such appeal unless it appears from clear and convincing proof that it is erroneous." See, also, *Woods v. Lincoln Gas & Electric Light Co.,* 74 Neb. 526, 104 N. W. 931.

In cases of this nature, the burden is on the taxpayer who appeals from a decision of the board of equalization, fixing the value of his property for taxes, to show that the action of such board is erroneous. *Western Union Telegraph Co. v. Dodge County,* 80 Neb. 23, 117 N. W. 468; *Welch v. Douglas County,* 103 Neb. 469, 172 N. W. 250. In the instant case, the plaintiff has failed to sustain this burden.

"A general tax cannot be dissected to show that as to certain constituent parts the taxpayer receives no benefit and therefore is entitled to relief because of such fact. Property within the limits of a municipality is subject to local taxation although it derives little or no benefit from the municipal government." *Schulz v. Dixon County, ante,* p. 549, 279 N. W. 179.

"'Farm lands,' for the purpose of taxation, shall be valued and assessed at their actual cash value—their value in the market in the ordinary course of trade." *Schulz v. Dixon County, supra.*

We find on an examination of the evidence in the instant case, with reference to assessment of plaintiff's lands, that it meets the requirements of *Schulz v. Dixon County, supra,* as hereinbefore announced.

AFFIRMED.