Minneapolis Dredging Company et al., Appellants, v. Addie S. Reikat, County Treasurer, et al., Appellees.

3 N. W. (2d) 889

Filed May 15, 1942. No. 31323.

*Shuman & Overcash,* for appellants.

*Zelma Derry* and *M. M. Maupin, contra.*

Heard before Simmons, C. J., Rose, Eberly, Paine, Carter, Messmore and Yeager, JJ.

Rose, J.

This is a proceeding to cancel or reduce the assessment of two dredges used by Minneapolis Dredging Company and Martin Wunderlich Company, contractors, in constructing for the Central Nebraska Public Power and Irrigation District the Kingsley dam in the North Platte river in east Ogallala precinct, Keith county, Nebraska.

The contractors scheduled for assessment personal property, consisting of "mechanical tools and industrial machinery" in Keith county as of April 1, 1940, at $70,000. This did not include the two dredges and the county assessor changed the schedule by inserting the dredges therein as "all other property and personal effects not otherwise listed," $142,000.

The contractors appealed to the county board of equalization and complained that the assessment of the dredges as their property was unlawful and void on the ground that they did not own the dredges April 1, 1940. The value placed thereon by the county assessor is also the subject of complaint.

After evidence had been adduced before the board, it found and determined that the contractors were the owners of the dredges April 1, 1940, and that the value thereof was as stated in the changed schedule—$142,000. From the decision of the board the contractors appealed to the district court where the assessment was sustained. The contractors appealed from the judgment of the district court to the supreme court.

The county board of equalization had jurisdiction to determine the questions of ownership and value. The presumption is that it faithfully performed its official duties on sufficient evidence of the facts. The burden was on the contractors to prove that they did not own the dredges April 1, 1940, or that the valuation of the county assessor was excessive. *Western Union Telegraph Co. v. Dodge County,* 80 Neb. 18, 23, 113 N. W. 805, 117 N. W. 468; *Hatcher & Co. v. Gosper County,* 95 Neb. 543, 145 N. W. 993; *Welch v. Douglas County,* 103 Neb. 469, 471, 172 N. W. 250, 173 N. W. 476. The county board of equalization is the tribunal empowered by law to determine controversial issues of ownership and value for the purposes of taxation and its decision is not reversible on appeal "unless it appears from clear and convincing proof that it is erroneous." *Kennedy v. Buffalo County,* 134 Neb. 744, 279 N. W. 464. *Field v. Lincoln Traction Co.,* 74 Neb. 418, 104 N. W. 931; *Woods v. Lincoln Gas & Electric Light Co.,* 74 Neb. 526, 104 N. W. 931.

On the question of ownership April 1, 1940, the contractors, Minneapolis Dredging Company and Martin Wunderlich Company, take the position that the dredges were illegally assessed for 1940, inasmuch as full title during that year was in the Central Nebraska Public Power and Irrigation District, a subdivision of the state, the property of which is exempted from taxation by a provision of the Constitution. Const. art. VIII, sec. 2. Is this position tenable?

The contractors, Minneapolis Dredging Company and Martin Wunderlich Company, entered into a written agreement with the Central Nebraska Public Power and Irrigation District July 20, 1938, obligating themselves "to furnish and deliver all tools, equipment, apparatus, facilities, transportation and services, labor and material, and do all work necessary to construct and complete according to the plans and specifications," the Kingsley dam. This contract contains the following paragraph:

"All right, title and interest of the contractor in such equipment, shall, upon the payment by the owner of the monthly progress payments therefor, become, by such progress payments, vested in the owner (Power and Irrigation District) and shall remain so vested until the completion of the work embraced in this contract. No progress payments will be made for any equipment in any way encumbered. The contractor and the owner shall at appropriate times furnish as necessary such instruments of title and other assurances as may be required."

The contractors named purchased from Bucyrus-Erie Company of South Milwaukee, Wisconsin, the two dredges for use in the performance of the contract to construct the Kingsley dam. In writing, October 24, 1938, the Bucyrus-Erie Company entered into this agreement with the purchasers, the contractors, "to design, build and deliver" to them two 30″ hydraulic dredges. The purchase price was $542,500, payable as follows: "Upon signing of this contract, $54,250; December 15, 1938, $54,250; January 15, 1939, $54,250; February 15, 1939, $54,250; March 15, 1939, $54,250; April 15, 1939, $54,250; upon completion of the

first dredge, $81,375; upon completion of the second dredge, $81,375; upon completion of the first 30 days of the working period of the first dredge, $27,125; upon completion of the first 30 days of the working period of the second dredge, $27,125. (Total) $542,500."

This agreement of the Minneapolis Dredging Company and the Martin Wunderlich Company, contractors, to purchase the dredges from the Bucyrus-Erie Company, called "Builder," contained the following among other terms:

"Subject to any prior right or title in the Central Nebraska Public Power and Irrigation District, as provided for in the contract between the purchaser and said district, hereinafter identified, the title to said dredges shall be and remain in the builder until full payment of the purchase price; provided, however, that the purchaser shall become part owner thereof to the extent of the payments made from time to time, as provided by Article II of this contract." ("Article II" referring to purchase price, payments and dates.)

The Bucyrus-Erie Company manufactured or purchased different dredge parts and shipped them to itself by rail to a spur track on the site of the Kingsley dam and assembled them on the premises where they were to be used. There is evidence that the different parts of the dredges were shipped in about 35 carloads and that the working weight of each dredge exceeded 800 tons. There is also evidence that the seller and buyers of these dredges performed their contract of sale and purchase prior to April 1, 1940; that the payments of purchase price were made by the contractors; that satisfactory tests and inspection required by the contract were made; that the dredges were delivered by the Bucyrus-Erie Company to the contractors and purchasers prior to April 1, 1940; that the latter were in the exclusive possession of the dredges, using them in the construction of the Kingsley dam in June, 1939, and were so using them April 1, 1940, and afterwards. The evidence shows further that the district never had possession of the dredges or control over them. The making of the contract of sale and purchase, the payment of the purchase price pursuant to agreement, the

satisfactory tests of the dredges in operation, the delivery to and acceptance of the dredges by the purchasers and the continuous use of them by the contractors in the work of construction, evidence the intention of the contracting parties to transfer ownership and title to the contractors and also evidence the actual transfer from seller to buyers.

The ownership and title, being in Bucyrus-Erie Company, could only pass to the district from the contractors. While the agreement between the contractors and the district provided that "All right, title and interest of the contractor in such equipment, shall, upon the payment by the owner of the monthly progress payments therefor, become, by such progress payments, vested in the owner and shall remain so vested until the completion of the work embraced in this contract," the evidence fails to show a conveyance or a delivery essential to a transfer of ownership and title from the contractors to the district prior to April 1, 1940. On that date the dredges were in the exclusive use, control and possession of the contractors under ownership and title previously acquired from the Bucyrus-Erie Company, as found by the district court on sufficient evidence. The record does not contain evidence of a conveyance of title from the contractors to the district, nor does it otherwise disclose such a conveyance or a demand by the district for "instruments of title." It follows that the contractors did not sustain the burden of proving that they were not the owners of the dredges April 1, 1940.

Was the assessment of the dredges at the valuation of $142,000 April 1, 1940, shown to have been excessive? An engineer who testified on behalf of the contractors estimated the value then at $55,000. The grounds for this estimate, as expressed by the witness, may be summarized as follows: The dredges were manufactured for this particular project. The wearing parts were designed and built for a limited life of two years. The difficulty of finding another project for the use of the dredges and the expense of dismantling, shipping and reassembling them at a new location, if found, depreciate the value after completion of the project for

which they were manufactured. In addition, a comparison with the price of two similar dredges at a public sale after completion of the project for which they were manufactured, together with the experience and opinion of the witness as an expert, indicated a value of not more than $55,000 for the two dredges used in the construction of the Kingsley dam. Testimony of this nature did not necessarily disprove the valuation fixed by the county board of equalization nor conclude the district court on that issue.

The purchase price of the dredges was $542,500. The evidence shows that on April 1, 1940, they had been used less than a year; that not more than half the two-year life of the wearing parts had expired on that date; that the dredges were serviceable April 1, 1940; that they were in operation until December 24, 1940. The future earning capacity of the dredges in operation April 1, 1940, on the identical, partially completed project for which they were manufactured seems to have escaped the attention of the witness.

The evidence on the issue of value has been found wholly insufficient to overturn the estimate of the board of equalization as approved by the district court.

AFFIRMED.