First National Bank v. Bartlett.

THE FIRST NATIONAL BANK OF OMAHA, APPELLANT, V. W. R. BARTLETT AND OTHERS, APPELLEES.

| | |
|---|---|
| 8 | 319 |
| 8 | 399 |
| 10 | 17 |
| 12 | 207 |
| 15 | 435 |
| 16 | 151 |
| 16 | 295 |
| 23 | 222 |
| 8 | 319 |
| 25 | 73 |
| 8 | 319 |
| 27 | 598 |
| 27 | 672 |
| 8 | 319 |
| 28 | 809 |
| 8 | 319 |
| 31 | 11 |
| 8 | 319 |
| 40 | 115 |
| 8 | 319 |
| 42 | 184 |
| 8 | 319 |
| 49 | 170 |
| 49 | 854 |
| 53 | 573 |

1. **Practice:** BILL OF EXCEPTIONS. The statute allows a party excepting fifteen days from the rising of the court, in which to prepare and submit to the adverse party a bill of exceptions. If longer time is desired, the court may extend the time not exceeding forty days from the rising of the court. Within ten days from the expiration of the time fixed by statute, or the order of the court for preparing the bill and submitting it to the adverse party, it must be returned to the party seeking the bill, with the proposed amendments, if any. And the party excepting has ten days after the expiration of the time fixed by law for the return of the bill to him in which to present the bill to the judge for his approval and signature.

2. **Husband and Wife:** DEALINGS BETWEEN THEM. In 1866, the wife of B. placed $5,000, in his hands, to invest in real estate for her, until such time as they could select a suitable location for a home. The money was invested by B., and in 1869 he purchased lots for a residence for which he paid $2.000. In 1874 he erected a residence on the lots in question, costing about $8,000, he at the time being insolvent. *Held*, 1. That the contract of B. with his wife could be enforced in equity; 2. That as no profits were proved to have accrued from the investments, none could be allowed the wife as against creditors of her husband; 3. That mere general allegations of profits realized are not sufficient, as against creditors of the husband, in the absence of any data from which the state of the account can be ascertained.

3. ——: ——. Transactions between husband and wife in regard to the transfer of property from him to her, by reason of which creditors are prevented from collecting their just dues, will be scrutinized very closely, and it must clearly appear that such transfers were made in good faith and for value.

4. ——: EVIDENCE. In a contest between a wife and the creditors of her husband in regard to property transferred to her by him, there is a presumption against her which she must overcome by affirmative proof.

ERROR from the District Court for Douglas county. Upon motion to quash bill of exceptions, *George W. Ambrose*, for defendants, appellees, cited—*Mullar v.*

*Ehlers*, 1 Otto, 249. *Hill v. Bassett*, 27 Ohio St., 597. *Sherlock v. Bank*, 53 Ind., 73. *Logansport Gas Light Co. v. Davidson*, 51 Ind., 472. *Higgins v. Malroney*, 50 Cal., 444. *Nixon v. Phelps*, 29 Vt., 198. *Justice v. Harrington*, 6 Ga., 578.

MAXWELL, CH. J.

This is an appeal from a decree of the district court of Douglas county. The decree was rendered on the ninth day of February, 1878, the term of court closing on the thirteenth of the following April. On the last day of the term, the following order was made in the cause: "On motion of plaintiff, it is hereby ordered that it have twenty days in which to prepare a bill of exceptions herein." On the twentieth day of April of that year, the bill of exceptions was submitted by plaintiffs to the attorney for the defendant, and returned on the same day. On the seventeenth day of the following May, the bill was presented to the judge of the district court for his signature, and was signed by him on that day—" the defendant's counsel insisting that the time within which the bill could have been signed has expired and for that reason protesting against its being signed, and excepting thereto." The defendant's attorney now moves to quash the bill of exceptions on that ground. The act to amend sections 308 and 311 of the code of civil procedure, approved February 15, 1877, provides that the party excepting must reduce his exceptions to writing within fifteen days, or in such time as the court may direct, not exceeding forty days from the rising of the court, and submit the same to the adverse party or his attorney of record for examination and amendment, if desired. Such draft must contain all the exceptions taken upon which the party relies. Within ten days after such submission the adverse party may propose

amendments thereto, and shall return said bill, with his proposed amendments, to the other party, or his attorney of record. The bill and proposed amendments must, within ten days thereafter, be presented by the party seeking the settlement of the bill, to the judge who heard or tried the case, upon five days' notice to the adverse party or his attorney of record, at which time the judge shall settle the bill of exceptions. If no amendments are proposed, or if proposed and allowed, the proposed bill may be presented with the amendments, if any, to the judge for settlement, without notice to the adverse party or his attorney of record.

The party excepting has fifteen days from the rising of the court in which to reduce his exceptions to writing, and submit the same to the adverse party without an order of the court. If he desires a longer period of time in which to prepare and submit the same to the adverse party, the court may extend the time not to exceed forty days from the rising of the court. In such case, the bill must be submitted to the adverse party within the period prescribed in the order. The adverse party then has ten days in which to propose amendments, and return the bill to the party excepting. The party seeking the settlement of the bill has ten days after the time limited for the return of the bill to him, with the proposed amendments, in which to present the same to the judge for his signature, making sixty days in all from the rising of the court. But where a shorter period is fixed upon, when the bill must be prepared and presented to the adverse party for examination and amendment, the twenty days within which the bill must be signed by the judge dates from that period, and cannot be extended beyond.

Let us apply these rules to the case at bar. On the thirteenth day of April, the order granting twenty days

in which to prepare the bill of exceptions was made; that order would expire on the third day of May. Twenty days thereafter, in which to present the amended bill to the judge for his signature, would expire on the twenty-third day of May, or six days after the bill was signed. The fact that the bill was presented to the adverse party for his approval in seven days after the order was made cannot deprive the plaintiff of a substantial right. The design of the law evidently is to allow a fixed period for the presentation of a bill to the adverse party for the proposal of amendments, and for presenting the amended bill to the judge for his approval and signature, being analogous, in that regard, to the return and answer day of a summons. The motion must therefore be overruled.

JUDGMENT ACCORDINGLY.

THE cause coming on to be heard, *Woolworth & Munger*, for appellant, contended:

The deed from Bartlett to Mrs. B. was void at law, because they were husband and wife. *Aultman v. Obermeyer*, 6 Neb., 260. *Glidden v. Taylor*, 16 Ohio State, 509. *Besson v. Eveland*, 26 N. J. Eq., 468. Under the circumstances in this case, and the allegations of the answer, the deed cannot be supported in a court of equity, and the estate will be charged with the judgment.

1.    In order to the validity as against creditors of a deed from husband to wife, it must be made upon a valuable consideration. That is wanting here. The money of Mrs. Bartlett became the property of her husband when it was placed in his hands by her, and could not therefore afterward form a valuable consideration for the conveyance. *Chase v. Palmer*, 25 Me., 341. *Pierce v. Thompson*, 17 Pick., 391. *Searing v.*

*Searing,* 9 Paige, 283-287. *Read v. Livingston,* 3 Johns. Ch., 481. 2 Story's Eq. Jur., sec. 1402, 1403. Bump on Fraud. Conv., 304.

2. Mrs. Bartlett, by permitting her husband to invest her money in his name and deal with it as his, acquiring thereby a credit to which he could not be entitled unless he were the owner of it, and suffering him to continue his dealings with it as his own for eight years—even then withholding his deed to her from the records until this and larger debts had been contracted by him, has divested herself of all right to a settlement. *Briggs v. Mitchell,* 60 Barb, 288, 317. *Besson v. Eveland,* 26 N. J., ch. 468, 471. *Glidden v. Taylor,* 16 Ohio St., 509, 519. *Gloon v. Alcott,* 11 Mich., 470. *Kelley v. Drew,* 12 Allen, 107. *Humes v. Schruggs,* 94 U. S., 22, 28. *Fox v. Meyer,* 54 N. Y., 125, 131. *Dunn v. Sargent,* 101 Mass., 336. *Carton v. Rideout,* 1 McN. & G., 599. *Gardner v. Gardner,* 1 Giffard, 126.

3. The deed bears date May 28, 1874, but was not recorded until February 4, 1875. Meanwhile, and shortly after the date of the deed, namely, June 10, 1874, this debt was contracted. The concealment of the deed, especially when considered in connection with the other facts, shows a fraudulent purpose which avoids it as to creditors intermediate its date and record. *Sands v. Ailbreth,* 2 Johns. Ch., 35, 48. *Bank of U. S. v. Houseman,* 6 Paige, 526, 538. *Coaty v. Gerlach,* 44 Penn. St., 43, 46. *Hood v. Brown,* 2 Ohio, 267. *Bank v. Gourdin,* Speer's Ch., 439. Bump on Fraud. Conv., 82. *Savage v. Murphy,* 34 N. Y., 308. *Case v. Phelps,* 39 Ind., 164.

*George W. Ambrose,* for appellees.

1. This case may be viewed, and the decree upheld, under various aspects, and the rules of courts of equity

as to resulting trusts, debtor and creditor, or contracts between husband and wife as to separate estate of the wife being applied, will do complete justice between these parties; or the court, finding the fee in the wife, will apply the doctrine that the improvements attached thereto; or even if in the opinion of the court the deed to the wife was in fraud of creditors, still if the property was a homestead creditors are not in a situation to complain. If a trustee purchase lands with trust funds, taking the conveyance in his own name, in equity the land is held as a resulting trust for the benefit of the person beneficially interested. *Platt v. Oliver*, 2 McLean, 313. The rule is, that the acts done by the trustee are presumed to be not for the benefit of the trustee, but for that of the *cestui que trust*. 4 Kent, sec. 61. When such trust fund has been converted into another species of property, and its identity can be traced, it will be held in its new form liable to the rights of the *cestui que trust*, and these general doctrines are not limited to trustees, technically so called, but extend to all other persons in a fiduciary relation to the party, whatever that relation may be. 2 Story Eq. Juris., 1380. Perry on Trusts, sec. 666, 124. *Eviston v. Tappen*, 5 Johns. Ch., 497.

2. A court of equity will aid and effectuate an agreement between husband and wife, if made manifest, although the agreement may have been void at law. Especially so, when the fund sought to be divested arose from the industry of the wife, under an agreement such as here disclosed. 2 Story Eq. Juris., sec. 1372. *Wood v. Warden*, 20 Ohio, 518. *Marshall v. Marshall*, 2 Bush (Ky.), 415. *Totten v. McManus*, 5 Ind., 407. *Resor v. Resor*, 9 Ind., 347. *Barnett v. Goings*, 8 Blackf. (Ind.), 284. *Garlick v. Strong*, 3 Paige (Chy.), 440. *Walker v. Walker*, 9 Wal., 743. *Keller v. Keller*, 45 Md., 269. *Wicks v. Clarke*, 3 Ed. Ch., 60.

3. The fact that the husband has managed the separate estate of the wife is no evidence of bad faith or intention to reduce the estate to his possession. *Knapp v. Smith*, 27 N. Y., 277. *Caswell v. Hill*, 47 N. H., 407. It is undisputed that Mrs. B. knew nothing of her husband's debts, but was steadily insisting upon the fulfillment of a contract, and the securing to her in a permanent form the results of her hard labor. If any fraud was intended by him, certainly she was not a party to it. Both must have been parties to the fraud in order to affect her. *Tootle v. Dunn*, 6 Neb., 93. *Hedman v. Anderson*, 6 Neb., 392. *Gridley v. Bingham*, 51 Ill., 153. *Snow v. Paine*, 114 Mass., 520. The mere non-record of the deed is no evidence of fraud. *Morris v. Ziegler*, 71 Pa. St., 450. *Galway v. Malchow*, 7 Neb., 285.

MAXWELL, CH. J.

In August, 1866, Wallace R. Bartlett came to Omaha, bringing with him about $1,000 in money. In the latter part of that year his wife came, bringing with her about $5,000 of her own money. This money was delivered to the husband under an agreement that he was to invest it in real estate for her benefit until such time as they could determine on a suitable location for a home. In 1869, Bartlett, in connection with seven others, purchased forty acres of land adjoining the city of Omaha, for the sum of $16,000, the deed being made to Bartlett, who conveyed to each of his co-purchasers the portion of the tract to which he was entitled. This tract of land was laid off into an addition to the city of Omaha, known as Bartlett's addition, and lots 3 and 14, costing $2,000, were selected as a site for the family residence, the legal title at that time being in Bartlett. Of the purchase money one thousand dollars was

derived from the sale of real estate held by the wife in her own name, and the second thousand appears to have been derived from the sale of property purchased with the wife's money, but the title to which had been taken in the name of the husband. In May, 1874, Bartlett made a quit-claim deed for the property in question directly to his wife, but the deed was not recorded until February, 1875. About the time of the execution of the deed in question, Bartlett commenced the erection of a residence on one of the lots in question, costing with the improvements about $8,000. In August of that year, he, with his family, moved into the house, although it was not fully completed until the next spring. At the February term, 1876, of the district court of Douglas county, the plaintiff recovered a judgment against Bartlett, Watson B. Smith, and Joel T. Griffin for the sum of $2,326, with interest at twelve per cent per annum, and $81.25 attorneys' fees. An execution having been returned unsatisfied, the plaintiff instituted proceedings by a creditor's bill against Bartlett and wife, alleging that the funds expended in the erection of the house were the funds of Bartlett, and that Sarah F. Bartlett, his wife, had no interest therein whatever. And that "during the period of expenditure the said Wallace R. Bartlett was insolvent and unable to pay his debts as they matured; and he so expended the said sum upon the said property, the title whereof was in his said wife, for the purpose of placing it beyond the reach of his creditors, etc.," and praying for a sale of the premises, etc. The defendants answered the petition of the plaintiff, alleging that the original indebtedness upon which the judgment was recovered was incurred on the tenth day of June, 1874, Bartlett being merely surety on the note; that the note was renewed a number of times, the last renewal being the fifteenth day of March, 1875. The

answer also alleges that the money expended in purchasing the lots in question belonged to Sarah F. Bartlett, and that lots 3 and 4 in block 251, in the city of Omaha, which had been occupied as a home for the family for a time, were sold in the spring of 1874 for the sum of $3,160, and the proceeds applied in improvements upon the lots in question, "together with other moneys belonging to the defendant, Sarah F. Bartlett." On the trial of the cause in the court below, a decree was rendered in favor of Mrs. Bartlett for the sum of $7,000, and declaring the same a lien upon the premises, subject to a prior mortgage, and subjecting the remainder of the property to the payment of plaintiff's judgment. The plaintiff appeals to this court.

Where it is clearly shown that a husband has his wife's money, holding it in trust for her, and the proof is clear that it is a *bona fide* transaction, she may become his creditor. *Monteith v. Bax*, 4 Neb., 176. *Aultman v. Obermeyer*, 6 Id., 260. And a wife may appoint her husband her agent to manage her separate property, and will be bound by his acts when within the scope of his authority. *McMurtry v. Brown*, 6 Neb., 377.

In the case at bar, the money was placed in the husband's hands by the wife for the express purpose of investing it in real estate for her, until such time as a suitable location for a home could be selected. This contract, when the funds were her separate property, in equity she had a right to make, even before the passage of the act of 1871 in relation to the rights of married women, notwithstanding the rule of the common law that her personal estate, when reduced to possession by the husband, becomes his personal property, because it is a rule of equity that if a husband, after marriage, contract with his wife that she shall separately possess and enjoy her separate estate, the contract will be upheld in equity. Story's Equity Juris., sec.

1372, and cases cited. This is not a case where the wife loaned money belonging to her separate estate to her husband upon his promising to repay it, but where she constitutes her husband her agent to invest the money until such time as a suitable location for a home could be found. Were these investments productive of profit—if so, to what an amount? We are not informed. The proof shows that the property purchased from Redick, which, with the building, cost $4,000, was sold several months afterwards for the same, thereby realizing no profit whatever.

Also that the property purchased from McCracken for $4,500, was afterwards sold at a considerable loss. Under these circumstances, in the absence of testimony showing the purchases and sales, it will not be presumed that the investments were productive of profit. It is true Bartlett in his testimony swears that $7,000 of his wife's money was put into the house, but fails satisfactorily to explain from what sources the money was derived, while it is apparent from his testimony that her funds were mingled with his, and no separate account kept of matters pertaining to her separate estate, Bartlett's testimony upon that point being: "I retained her funds and kept them invested in a line of succession until we concluded to invest in a homestead, and kept them as distinct as I could in the way I was doing business." From other portions of his testimony it is apparent that no distinct account was kept. The burden of proof is on these defendants to show the amount of profits received from these investments. And mere allegations as to profits cannot be received where better evidence is at hand, namely the transactions upon which profits are claimed to have been made.

Transactions between husband and wife in relation to the transfer of property from him to her, by reason

of which creditors are prevented from collecting their just dues, will be scrutinized very closely, and it must be clearly established that such transactions were made in good faith. *Aultman v. Obermeyer*, 6 Neb., 264. The reason is, that there is such a community of interest between husband and wife, that such transfers are often resorted to for the purpose of withdrawing the debtor's property from the reach of his creditors and preserving it for his own use. Therefore, in a contest between the wife and the creditors of her husband, there is a presumption against her which she must overcome by affirmative proof. *Seitz v. Mitchell*, 4 Otto, 583. The insolvency of Bartlett appears to have been caused by misfortune rather than by his own fault. But his property, even if it had been given to his wife during this period, would be liable for his debts. The decree of the court below will therefore be modified so as to give Sarah F. Bartlett a lien on the house and lots in question for the sum of $5,300, in place of $7,000, and in all other respects the decree of the court below is affirmed.

JUDGMENT ACCORDINGLY.