A. L. EICHHOLZ ET AL., APPELLEES, V. E. H. LUIKART, RECEIVER OF SOUTH OMAHA STATE BANK, APPELLANT.

FILED FEBRUARY 14, 1935. No. 29101.

F. C. Radke, Barlow Nye, O'Sullivan & Southard and G. E. Price, for appellant.

Votava & McGroarty, contra.

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and CHASE, District Judge.

GOSS, C. J.

In this action for an accounting defendant appeals. When the bank closed, on August 12, 1931, and E. H. Luikart was appointed receiver, plaintiffs owed the bank $4,500 on their note dated June 22, 1931, due in 60 days, with a collateral agreement on the same printed form pledging as security certain items. The first one described is a savings bank account No. 5542, in the name of Emma Witt. The book was delivered to and held by the bank with the other collateral.

The savings bank account was in the savings department of the same bank holding the note. Plaintiffs pleaded that they had become the owners of the deposit represented by the book on or about January 24, 1931, and that they were entitled to have the balance in said savings account set off against the amount due the bank on the note. They asked for an accounting on this and other items of collateral on which collections had been made and that the securities pledged and still in the hands of defendant be returned to them.

Defendant duly traversed the allegations of the petition and by cross-petition set out the note of plaintiffs describing the collateral pledged and what collections had been made and credited on the note. The cross-petition alleged that, when the bank closed, plaintiffs had on deposit in their checking account a balance of $285.19, which on January 7, 1932, was duly offset against plaintiffs' note; that on October 29, 1931, defendant collected $791.64 on a pledged assignment and credited it on the note, and that there is still due defendant $3,703.91, with interest from

October 7, 1932; defendant prays for an accounting, foreclosure of the items pledged, and an order of sale to the sheriff to sell them at public sale to the highest bidder for cash.

The court found that plaintiffs became the owners of the savings deposit on or about January 24, 1931, and were entitled as a matter of law to have its balance of $4,082.50 on the date the bank closed offset, together with the $285.19 in the checking account and the $791.64 collected October 29, 1931, on the assignment heretofore mentioned, leaving $656.58 due plaintiffs as of October 29, 1931. The court ordered this sum, with interest to August 10, 1933, a total of $734.68, paid to plaintiffs; and ordered their $4,500 note canceled and returned to them together with the remaining collateral pledged to secure the note.

Eichholz did business under the name Interstate Plumbing and Heating Company. This was a corporation. Most of the stock was in his wife's name, a few shares in his. Sometimes notes to the bank were made in the corporate name with Eichholz or his wife as comaker. At times Eichholz alone signed them and at other times they were signed by himself and wife. The note in suit was signed by plaintiffs only.

The controversy hinges on the ownership of the Emma Witt pass-book account. If plaintiffs owned it when the bank failed and went into the hands of the receiver, the trial court was right and plaintiffs were entitled to a set-off against the amount they owed the bank.

Emma Witt is the mother of Mrs. Eichholz. She had frequently lent her credit by means of the pass-book to plaintiffs and it had been used as collateral for money evidenced by notes of plaintiffs to the bank. Five canceled notes were introduced in evidence by defendant, the first dated September 19, 1930, and the last dated January 22, 1931, on which this pass-book is listed as collateral. The purpose of putting these notes in evidence was to impeach the credibility of Eichholz, who had testified that the pass-book was at home (probably meaning at the home of Mrs.

Witt) on January 24, 1931, when, he testified, the plaintiffs gave their note to Mrs. Witt and became the owners of the pass-book.

Mrs. Witt and another daughter, Mrs. Merkle, lived together. Emma Merkle testified that she lived with her mother, who is a widow and never has been in business. The witness usually aided her mother on any business matters. On January 24, 1931, her sister, Mrs. Eichholz, came to her mother and requested more funds. Mrs. Merkle asked if she and her husband would give a note. Upon receiving an assent she made out a note for what she remembered to be the balance on the pass-book, which was not there, but was either at the bank or in a safe deposit box to which both witness and her mother had access. The note is for $4,066, dated January 24, 1931, in favor of Emma Witt, signed by A. L. Eichholz and Adelia Eichholz.

There is in evidence an undated and blank receipt, being a printed form used in the savings department when a holder of a pass-book withdraws money. This was signed by Mrs. Emma Witt. Eichholz testified, "That is a check on Mrs. Witt to cancel the book," that it was procured at the suggestion of Mr. McGurk (president of the bank), and that it was held with the savings deposit book. Eichholz testified, in answer to a question by the court, that he took it to the bank and put it in at the same time as the book. He was not able to tell when the pass-book and receipt were delivered to the bank. The withdrawal receipt was not a check, but would operate to assign the account, if other evidence favored this interpretation.

The theory of defendant is that the note set up by plaintiffs as given to Mrs. Witt for the pass-book was a sham and that there never was any transfer of the savings account to plaintiffs except as collateral. The note was for $4,066, dated January 24, 1931, which Mrs. Merkle, who drew it, testified was the balance of the principal on the account. An examination of the pass-book discloses the balance shown on January 1, 1930, to be $4,066.10. The

book shows later credits of interest as follows: July 1, 1930, $60.99, and January 1, 1931, $61.90, leaving the balance as of the last named date $4,188.99 and not $4,066, the amount for which the note was given. The book then shows there was a withdrawal on February 6, 1931, of $161.90. As this occurred after plaintiffs claimed to have full title to the pass-book account, defendant argues that it shows there had been no *bona fide* transfer of the account on January 24, 1931, or at any other time. Mrs. Merkle, who had suggested the note, and who drew it for her mother, testified that she did not have the book and that she took her "last recollection of the amount in the book." While it was not the then balance of the book, it was within ten cents of the principal due on the account a year before.

As to the withdrawal on February 6, 1931, by Mrs. Witt, of $161.90, defendant argues that it militates against the claim that plaintiffs obtained title and entire dominion over the account on January 24, 1931. Mrs. Merkle testified that she made the withdrawal, presenting to the bank the receipt signed by her mother. She thought it was for the difference between the face of the note and the balance in the pass-book or the amount of the interest credited.

Then Emma Witt, in the receivership, made proof of claim on this pass-book account on September 29, 1931, and it was allowed in the total sum of $4,082.50. The claim recites "Above savings account now held as security to A. L. Eichholz note No. 2051 of $4,500.00." Mrs. Merkle testified that the blank was sent to Mrs. Witt at the same time another was sent by State Bank of Omaha and she went to both banks and "made a claim for both banks according to the way it said it had to be made out." She went with her mother to South Omaha State Bank. They did not consult an attorney nor tell Mr. Eichholz they intended to file the claim, but talked to the man in charge. Of course Mrs. Witt, who signed the claim filled out by the man in charge for the receiver at the bank, could not thereby change the real title to the account, but

that they made the claim affects their credibility in the appraisal of their testimony as to any change of title to the account, vesting it in plaintiffs.

Mr. Eichholz testified in substance that he had told Mr. McGurk, the president of the bank, that he had given a note to Mrs. Eichholz for the pass-book and that plaintiffs owned the account, but wanted it held as collateral. An adjournment of two weeks was taken for defendant to secure the testimony of Mr. McGurk, who was produced and positively denied this testimony of Eichholz. He stated that he never had any such knowledge or notice.

The evidence is very unsatisfactory. The parties are unused to accurate business and legal ways. Mrs. Witt's testimony is almost entirely valueless. The case is one purely of fact. We are rather impressed from the record that the witnesses for plaintiffs are telling the truth. The trial judge observed them and their manner of testifying and thus had a better opportunity than we to decide where the real truth is. "While the law requires this court, in determining an appeal in an equity action involving questions of fact, to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence, where there is an irreconcilable conflict therein on a .material issue, consider the fact that the trial court observed the witnesses and their manner of testifying." *Johnson v. Erickson,* 110 Neb. 511. We have so held in many cases. We apply the rule here.

The judgment of the trial court is

AFFIRMED.