C. L. MALONE, APPELLEE, v. WILLIAM BELL ET AL., APPELLANTS.

272 N. W. 312

FILED APRIL 2, 1937. No. 29802.

*Skiles & Skiles,* for appellants.

*Fred C. Foster, Herbert W. Baird* and *R. M. Charters,* contra.

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and ELDRED, District Judge.

GOSS, C. J.

This is an appeal from a decree setting aside a conveyance of lands by a husband to a wife as made without consideration and for the purpose of hindering, delaying and defrauding plaintiff, a creditor of the husband.

Defendants William Bell and Anna C. Bell are husband and wife, who live on a farm about two and one-half miles northeast of Waverly. It is described as the west-half of the northwest quarter and of the southwest quarter and that part of the east-half of the northwest quarter lying south of Salt creek, totaling about 196 acres, all in section 2, township 11, range 8, Lancaster county. The title was in William Bell and for 30 years it had been the family home. Less than two miles west thereof in section four defendants owned jointly the southwest quarter, being a fractional quarter containing about 147 acres.

August 9, 1932, William Bell conveyed by quitclaim deed to Anna C. Bell all his interest in the above described lands for a stated consideration of one dollar. These two farms, of which Anna C. Bell previously owned a half-interest in the 147 acres, were encumbered by mortgages totaling $13,000 and interest and taxes amounting to an additional sum of about $1,900. The testimony of defendants and their two witnesses fixes the value of the land at not more than $50 an acre at the time of the conveyance. Plaintiff offered no testimony as to values.

Defendants pleaded that the deed to Mrs. Bell was for a good and valuable consideration. The evidence of defendants in that behalf shows that in 1918 Mrs. Bell received from her father a gift of $5,000 in cash; that she deposited it in the Lancaster County Bank and kept it there for two years, receiving interest on it; that in the fall of 1919 or early part of 1920 her husband bought some Kansas land

and she drew the money out of the bank and loaned it to him; that a $5,000 note in evidence, written by an officer of the bank, in favor of Anna C. Bell, dated February 26, 1920, executed by William Bell, for the loan, and which has never been paid, was the real consideration for the deed aforesaid; that Mr. Bell used the money to buy the quarter-section of Kansas land which he still owns, and that in 1919 he had bought another quarter-section of land in Coffey county, Kansas, which in 1929 he traded for the southwest quarter of section 4, township 11, range 8, in Lancaster county, being the 147 acres referred to, taking title thereto jointly in the names of himself and wife.

Plaintiff became a creditor of William Bell by the purchase from the Lancaster County Bank on August 30, 1929, for $1,700, of Bell's note to the bank. Bell renewed the note four times after Malone became the owner. Finally, being unable to get the money on the note or to obtain further security, plaintiff sued and obtained a judgment against William Bell in the district court for Lancaster county for $2,030.56 and costs. After going through the necessary formalities he brought this suit to set aside the deed from Bell to his wife and to subject the land in suit to payment of his judgment.

The testimony of defendants also shows that Mrs. Bell had owned 105 other acres in Lancaster county for 24 years. It was purchased with money she had accumulated from savings on the home farm. About 1928 she borrowed $4,000 on the security of this 105-acre farm and lent it to her husband who used it to pay certain debts he then owed. They testified that this sum had never been repaid.

Mrs. Bell testified that, when she received the conveyance sought to be set aside, she knew that it conveyed the greater part of her husband's assets, that he was in straitened circumstances and that he owed the note to Malone and owed a note to the Lancaster County Bank.

When Malone purchased the note from the bank there was exhibited to him certain property statements Bell had furnished the bank on January 4, 1927, and May 3, 1929,

showing large assets, but no indebtedness to Mrs. Bell and indeed stating that Bell owed no money to relatives. These statements were made out in the handwriting of the banker. Mr. Bell testified, in substance, that he signed them without reading them, which does little to exonerate him from notice of their contents. But Mrs. Bell testifies that she had no knowledge of the statements or of their contents. Her testimony on the subject was not rebutted.

The decree found that plaintiff's judgment was a lien upon the 196-acre home of Bell in section two, subject to mortgages, and subject to a $2,000 homestead right, and a lien upon the 147 acres in section four, although Mrs. Bell had long owned a half-interest in that tract and was not personally liable on the note which was the basis of the judgment.

"The question of fraudulent intent is a question of fact and not of law, when considered in the matter of a conveyance charged to be made to hinder and delay creditors." *State Bank of Beaver Crossing v. Mackley,* 121 Neb. 28, 236 N. W. 165. See Comp. St. 1929, sec. 36-405.

(1) "Where husband transfers property to wife, which prevents his creditors from enforcing payment of their claims, it is presumptively fraudulent as to them, and the burden is upon wife to prove otherwise." (2) "A *bona fide* debt due from husband to wife is a good and sufficient consideration to support conveyance of property as security for such debt." (3) "An insolvent debtor may in good faith pay or secure valid debt of one creditor to exclusion of others." *Luikart v. Tidrick,* 126 Neb. 398, 253 N. W. 414, and cases cited.

A debtor in failing or insolvent circumstances may prefer a creditor, including his wife, to the exclusion of others. *Nebraska Wheat Growers Ass'n v. Johnson,* 130 Neb. 99, 264 N. W. 165.

The evidence of fraud on which plaintiff, and evidently the trial court also, relied consists in the circumstances surrounding the parties and their dealings rather than in any direct testimony offered in the case. Defendants

deny any fraud. The property conveyed to Mrs. Bell by her husband was encumbered to substantially its full value at the time of the conveyance, as indicated by the evidence. There was the circumstance that the note was made on February 26, 1920, and Bell's deed to his wife was executed August 9, 1932. The note was a demand note. It was kept in a box in the home where both parties had access to it. It was in evidence and shows that it has never been actually canceled. We do not think, however, that these things prove any fraud on the part of either Mr. or Mrs. Bell. Even if fraud could be attributed to him alone, it would not be sufficient. To set aside a conveyance for a valuable consideration from one member of a family to another as a fraudulent transfer, fraudulent intent must be participated in by both parties to the transaction. *Farmers State Bank of Smithfield v. Renken,* 129 Neb. 416, 261 N. W. 851; Comp. St. 1929, sec. 36-406; *Farmers & Merchants Nat. Bank v. Mosher,* 63 Neb. 130, 88 N. W. 552; *State Bank of Beaver Crossing v. Mackley,* 121 Neb. 28, 236 N. W. 165.

Some value is sought by plaintiff from the fact that Mrs. Bell borrowed $4,000 on the 105 acres, purchased by her out of savings about 24 years before the trial, and turned it over to her husband in 1928 to pay his debts, without any accounting to her in this suit or otherwise for the sum so advanced to him. It may be said that the 105-acre tract and the $4,000 borrowed on it by Mrs. Bell and turned over to her husband is, as stated by plaintiff's brief, "only important to show the course of dealing between the parties" and to show that this particular farm and this fund were "considered community property." However, Mrs. Bell testified that the farm was still hers. And it is not sought in the action to subject the farm to plaintiff's judgment. It does not seem to us that this incident has much, if any, bearing on the issues of the case.

While we try the case *de novo,* we are authorized by the rules to take into consideration that the trial judge saw and heard the witnesses and that their appearance and manner of testifying is disclosed to him as it cannot be

fully disclosed to us through the printed record. The record of the evidence does not appear to us to warrant the adoption of any such rule in this case. It indicates that defendants are not skilled in dissimulation as are some who are well used to testifying. The record of their testimony does not disclose to us any shiftiness or evasiveness which is sometimes quite apparent from the words in which testimony is recorded.

We are of the opinion defendants overcame any presumption that the deed of the husband to his wife was fraudulent as to the plaintiff-creditor, and that plaintiff has failed to establish his cause of action by a preponderance of the evidence. The judgment of the district court is reversed and the action is dismissed.

REVERSED AND DISMISSED.

DAY, J., dissenting.

This is a suit in equity by a judgment creditor to set aside as fraudulent conveyances of real estate from a husband to his wife. The defendants appeal from the decree of the trial court setting aside the conveyances and subjecting the real estate to the lien of the judgment, subject to the homestead rights in a part of the real estate.

The defendant William Bell was the owner in fee of 196 acres and also owned as a tenant in common with his wife a fractional quarter consisting of 147 acres. He conveyed all his interest in this land to his wife by a quitclaim deed executed August 9, 1932. These two farms were encumbered by mortgages securing a principal debt of $12,000. The defendants pleaded that the debt to Mrs. Bell was for a good and valuable consideration.

A transfer between husband and wife by reason of which a creditor is prevented from collecting his claim is presumptively fraudulent. *First Nat. Bank v. Bartlett* (1879) 8 Neb. 319. In that opinion, Chief Justice Maxwell said: "Transactions between husband and wife in relation to the transfer of property from him to her, by reason of which creditors are prevented from collecting their just dues, will be scrutinized very closely, and it must be clearly

established that such transactions were made in good faith. *Aultman, Taylor & Co. v. Obermeyer*, 6 Neb. 260. The reason is, that there is such a community of interest between husband and wife, that such transfers are often resorted to for the purpose of withdrawing the debtor's property from the reach of his creditors and preserving it for his own use. Therefore, in a contest between the wife and the creditors of her husband, there is a presumption against her which she must overcome by affirmative proof." In a later case (1886) it was held that, in transactions between husband and wife in relation to her separate estate, the same principles of law apply as are applicable to dealings between strangers, but where the effect of such dealings is to deprive creditors of an opportunity to subject the property of the husband to the payment of their claims, the facts involved in such transactions will be viewed with suspicion and proof of their *bona fides* required. *Lipscomb v. Lyon*, 19 Neb. 511, 27 N. W. 731. Again, in 1901, it was held: "Transactions between husband and wife, to the prejudice of creditors, should be carefully scrutinized and their *bona fides* clearly established; there is a presumption against the good faith of such transactions which must be overcome by affirmative proof." *Lynch v. Englehardt-Winning-Davison Mercantile Co.*, 1 Neb. (Unof.) 528, 96 N. W. 524.

In a most recent case (1935) it was held: "In a creditor's suit to set aside a conveyance by a debtor to his wife alleged to have been made in consideration of money turned over by the wife to the husband many years before, the burden is upon the wife to show that the debt is genuine, that her purpose was honest, and that she acted in good faith in obtaining the title." *Waterbury State Bank v. O'Neill*, 129 Neb. 150, 260 N. W. 808.

Whatever may be the rule in other jurisdictions, it is established by abundant authority in this state that a transfer of property from a husband to his wife by reason of which creditors are prevented from collecting their claims is presumptively fraudulent, and the burden of proof is

upon the wife to establish that it was made in good faith for a consideration. *Luikart v. Tidrick,* 126 Neb. 398, 253 N. W. 414. "The question of fraudulent intent is a question of fact and not of law, when considered in the matter of a conveyance charged to be made to hinder and delay creditors." *State Bank of Beaver Crossing v. Mackley,* 121 Neb. 28, 236 N. W. 165. See Comp. St. 1929, sec. 36-405.

These rules applied to the present case would require Mrs. Bell to establish by a preponderance of the evidence that the land in question was transferred to her in good faith and for a consideration. In the absence of evidence to establish the good faith of the transaction, it is presumptively fraudulent. The evidence in this case does not establish that the transfer was made in good faith for a consideration. There is evidence in the record that in 1918 Mrs. Bell received from her father a gift of $5,000 in cash, which she deposited in the bank and kept intact for a period of two years. She withdrew this money from the bank and permitted her husband to use it in the purchase of some land in Kansas. The purchase was made for $10,000 in cash, which included Mrs. Bell's money, and the assumption of a $6,000 mortgage. In 1929 a part of this Kansas land was traded for the 147-acre tract herein involved. This tract was acquired by Bell in exchange for the Kansas land and a payment of $1,000 cash, and a mortgage was assumed for $6,000, the same amount as the encumbrance on the Kansas land. So that, at the time of the acquisition, Bell had over $11,000 in cash in this tract, which was encumbered for $6,000. Mr. Bell caused the title to this 147-acre tract to be placed in the name of himself and his wife. There is evidence in the record that in 1929 this land was worth more than $10,000 in excess of the mortgage. One-half of this valuation was at least equal to the amount of money Mrs. Bell advanced her husband in the Kansas deal. Of course, Mrs. Bell testifies that this land was not put in her name to satisfy the debt to her. Apparently the indebtedness was to remain a family ghost to scare away honest creditors of her husband, a family custom which courts of equity have condemned.

It is true that the note was not destroyed at that time or canceled. It was kept as an amulet against evil days. Specifically, it was kept in a box with valuable papers, accessible to both Mr. and Mrs. Bell. The same thing is true as to this note after the transfer of the title to the land which caused this litigation. This note continued to repose in the same place, unsurrendered and uncanceled, possessing an apparently latent power to be used when and if necessity arose.

Now, if we apply the rule of strict accountability to the transaction between this husband and this wife, the husband was not indebted to the wife after the transaction of 1929. In 1932, when it was sought to make the transfer of all his property upon the consideration of this $5,000 note, there was strictly nothing owing by Mr. Bell to Mrs. Bell, and the transaction was not a good faith transfer for the purpose of paying an indebtedness to the wife by her husband. Under the decisions of this court, it was presumptively fraudulent and for the purpose of hindering, delaying, and defrauding a creditor.

The indebtedness of the husband to the plaintiff in this case is represented by a note which had been renewed from time to time for years. The note was originally executed by the bank and later bought by the plaintiff in this case. Much stress was placed in the argument upon the fact that the note from the husband to the wife was filled out by some one who worked in this same bank, and that the bank therefore had knowledge of the indebtedness to the wife. It is argued from this that the loan was not made upon the faith of this property. But this argument is untenable because this note was renewed four times by this plaintiff, and there is no evidence that the plaintiff had either direct or constructive notice that there was any indebtedness of the husband to the wife.

In fact, the husband made several financial statements to the bank in which he stated that he had no indebtedness to any relative. This property statement was shown to the plaintiff by the bank at the time he purchased the note.

Mr. Bell seeks to avoid the consequences of these statements by saying that he signed them without reading them, which does not exonerate him from notice of their contents. It was upon the faith of this property statement that he was originally loaned approximately $1,700. It is insisted by the appellants that the wife did not sign this statement and did not know anything about it, and that her rights could not be affected by it. But she knew her husband's financial condition and actively participated in his business affairs for years. Anyhow, this signed statement, which was made for the purpose of securing this loan, contains statements contradictory to his testimony in this case. Are we to credit fully his testimony now that he was indebted to his wife in the sum of $5,000 at the time of the execution of the note, when at the time he signed a written statement for the purpose of securing the loan, he said that he was not so indebted? This would seem to tax unduly the credulity of this court.

There is also evidence in the record by Mrs. Bell herself that when this land was conveyed to her, which conveyance is now sought to be set aside, she knew that it was all of her husband's assets in the state of Nebraska and was the greater part of his assets; that he was in straitened circumstances and owed a note to the Lancaster County Bank, and that he could not pay his debts. All the circumstances of the transactions between this husband and his wife are sufficient to establish that this transfer of property was not a good faith transfer for a consideration, and that this transfer was a fraudulent conveyance for the purpose of hindering, delaying, and defrauding creditors, and as such it should have been set aside by the trial court.

But there were other transactions between Mr. and Mrs. Bell which, while not directly bearing upon the issues in this case, do, however, indicate the business relationship between them. In 1912 Mrs. Bell acquired in her name a 105-acre tract which was mortgaged at the time of purchase. The money with which this land was purchased was accumulated by the sale of farm products from the

land here involved. The mortgage upon it was paid off in the same manner. As to this, Mrs. Bell testified: "We got a loan when we bought it and then we worked and paid it off and then I borrowed the money of Mr. Price again, $4,000." This $4,000 was paid on the debts they owed in 1928. Even this transaction, for all the record shows, might well have extinguished the debt created in 1920 due Mrs. Bell from her husband. No note was given representing this as a debt. There is no evidence that this was even considered a debt until the exigencies of this case incubated the idea. A fair inference as to this is that the mortgage debt on this 105-acre tract was paid from Mr. Bell's money, and that it was merely borrowed again from the bank to pay some of his debts.

There is evidence in the record that this transfer was not inspired by an honest desire of the husband to pay a debt due his wife. In 1932, when this transfer was made, there was pending against him an action for damages for $10,000 as a result of an automobile accident, an automobile collided with a load of corn Mr. Bell's hired man was driving. There is testimony that Mr. Bell stated this was the reason for the transfer, which however Mr. Bell denied. He does admit that he probably talked to Mr. Malone about the accident and the case.

It is not necessary in this case for the court to invoke the rule that a transfer of property by a husband to a wife is presumptively fraudulent, and that the defendants must show that it was a good faith transfer for a consideration. There is sufficient evidence to establish the fact affirmatively that it was not a good faith transfer. In *Waterbury State Bank v. O'Neill, supra,* it was said: "The court will carefully scrutinize a conveyance from husband to wife by which other creditors are prevented from collecting their claims, will consider the fact that knowledge probably rests solely with the parties to the transaction, and will take into account reasonableness or unreasonableness of their evidence, their manner of testifying, and all facts and circumstances in evidence bearing upon the *bona fides* of the

transaction." If Mrs. Bell had a claim against her husband, she did not assert it, but rather concealed it, for a period of twelve years and allowed her husband to obtain credit from the bank and this plaintiff because of his apparent ownership of the land.

Although we try this case *de novo,* the finding of fact made by the trial court is entitled to our consideration. While this court in an equity suit must reach an independent conclusion as to questions of fact, it will consider that the trial court observed the witnesses and their manner of testifying in determining the weight of the evidence. *Johnson v. Erickson,* 110 Neb. 511, 194 N. W. 670; *Gentry v. Burge,* 129 Neb. 493, 261 N. W. 854; *Eichholz v. Luikart,* 128 Neb. 368, 258 N. W. 869; *Krelle v. Bowen,* 128 Neb. 418, 259 N. W. 48. This case was tried before an able, careful, and experienced trial judge, whose conclusions in this case are entitled to our consideration. Even the cold record as it comes to this court shows a failure on the part of Mrs. Bell to account for the various transactions between herself and her husband. Take, for example, when she was asked, "What debt was that (the transaction) intended to pay you, if any?" and she answered, "I don't know." This is not an isolated instance. When she was asked why she had not collected the debt before, the reply was that she did not want to, and her reason for asking payment at this time was that she wanted to be paid.

I respectfully submit the foregoing analysis of the record in this case with the firm conviction that the judgment of the capable and experienced trial judge should be affirmed. While respecting the opinion of the majority, I am amazed that they are unwilling to apply the well-established rules relative to such transactions here, and in effect, although not intentionally, approve a transaction between husband and wife reeking with fraud. An impartial examination of the record produces an abiding conviction that the transfer of the property was fraudulent and made for the purpose of defrauding an honest creditor of the husband, and that there was no consideration for

the conveyance. The conveyance of the land from the husband to the wife was (to use the language of former Chief Justice Maxwell of this court) "for the purpose of withdrawing the debtor's property from the reach of his creditors and preserving it for his own use." *First Nat. Bank v. Bartlett, supra.*

Carter, J., and Eldred, District Judge, authorize me to state that they concur in this dissent.