FARMERS ELEVATOR COMPANY, APPELLEE, v. JOE H. PECK ET AL., APPELLANTS.

278 N. W. 499

FILED MARCH 18, 1938. No. 30251.

*Frank A. Dutton* and *Joseph E. Strawn,* for appellants.

*E. E. Richards, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE, CARTER and MESSMORE, JJ.

MESSMORE, J.

This is an action in the nature of a creditors' bill, wherein the plaintiff's petition alleges, in substance, that on March 20, 1933, the defendant Joe H. Peck was the owner of three quarter-sections of land; that he executed and delivered to the plaintiff for a valuable consideration his promissory note in the sum of $540.32, with interest at 10 per cent., due September 20, 1933; that said note was past due and was sued on by plaintiff and judgment rendered thereon October 7, 1935, in the amount of $677.95; that execution was issued on said judgment and returned by the sheriff wholly unsatisfied; that on February 26, 1934, the defendant Joe H. Peck fraudulently, wrongfully, unlawfully and without consideration, for the purpose of hindering, delaying and defrauding creditors, transferred and conveyed to his wife, Melissa Peck, the land in question, which at the time of conveyance was subject to a mortgage to the Federal Land Bank of Omaha, in the sum of $2,500; that subsequent to the conveyance of said real estate some of the buildings thereon were destroyed by fire; that money collected for insurance paid the mortgage debt, and, in addition thereto, Melissa Peck collected $1,300; that said land is of the reasonable value of $6,000.

Plaintiff prays that the conveyance from defendant Joe H. Peck to Melissa, his wife, be set aside.

The defendants filed separate answers, which admit the execution and delivery of the note, the conveyance in question, the history of the mortgage indebtedness, and the borrowing of money by defendant Joe H. Peck from his wife Melissa; allege that defendant Joe H. Peck did owe Melissa $523; that his father, in his last illness, was without property and in need of help, and in consequence thereof defendant Joe H. Peck conveyed to his wife Melissa the real estate in question subject to the 2,500-dollar mortgage; paid his obligation $523, and received a check for $477; that Melissa knew of the indebtedness of defendant Joe H. Peck to the plaintiff. Both answers contain a general denial. The reply is a general denial to the answers.

The trial court found generally for the plaintiff and against the defendants; that the defendant Joe H. Peck was indebted to the plaintiff at the time said conveyance was made, and that Melissa Peck, his wife, had knowledge of such indebtedness; that the deed was made to defraud plaintiff and other creditors, and that plaintiff had exhausted its legal remedy; decreed that the conveyance of February 26, 1934, be set aside, reserving to defendants a homestead interest in the quarter-section of land in question. From such decree, defendants have appealed.

The evidence discloses the execution and delivery of the note, the conveyance of the real estate from defendant Joe H. Peck to Melissa, and the burning of the buildings and collection of the insurance, all as related in the pleadings. The value of the land at the time of the transfer of the real estate, fixed by plaintiff's witnesses, was from $10,000 to $14,000, and after the burning of certain buildings on the land, with about $1,000 of improvements still standing thereon, the land was of the value of $6,000 to $10,000. Its value, as fixed by defendants' witnesses, without the buildings, was $4,250, and the precinct assessor fixed the value at $3,150. Its assessed valuation in 1934 was $3,880.

It is interesting to note the value of the land fixed by defendant Joe H. Peck on or about April 6, 1934, approximately six weeks after the transfer of the land to his wife Melissa. In an application for insurance he stated that he was the sole owner and title-holder of the land and fixed the value of the buildings at $6,500 and the land at $25 an acre, totaling $18,700, and stated that he paid for the land in 1920 the sum of $16,320.

From the evidence on value we have the testimony of defendant Melissa Peck wherein she stated that the land was of the value of $3,500, the amount she paid for it, and that, after the fire which destroyed certain buildings on the land, she received a total of $3,800, and that there was still $1,000 in improvements remaining thereon. The money borrowed by Joe H. Peck from his wife, to be used for burial expenses, erection of a monument, and in the last illness of his father, was borrowed two months before his father passed away. The evidence is rather extensive, but the foregoing synopsis thereof is sufficient for a determination of this case.

The defendants contend that the decree of the trial court is not sustained by and is contrary to the pleadings and the evidence, inequitable and contrary to law, and, in this connection, state that to set aside the conveyance in question would be taking the property and money of Melissa Peck to pay the obligations of her husband; also that plaintiff did not foreclose a chattel mortgage which was taken by it as security for the loan, and has not exhausted its remedy at law.

The evidence discloses that the chattels under the mortgage were of the value of from $70 to $80 at the time of the bringing of this action, and at the time of borrowing the money from plaintiff the value was slightly less than the amount borrowed. The execution on the judgment was returned by the sheriff without finding sufficient property of defendant Joe H. Peck upon which to levy.

"There are two classes of creditors' bills; one to reach the equitable assets or property of the debtor on which an

execution at law cannot be levied; the other in aid of an execution at law, as to set aside an encumbrance or a transfer of property made to defraud creditors. In the first class of cases the creditor must allege and show that he has exhausted his remedy at law, while in the second it is sufficient to show that his claim has been reduced to judgment and docketed in the county where the land lies which he seeks to subject to the payment of his claim. The equity court in such case is merely lending its assistance to the legal tribunal to remove a fraudulent obstruction interposed to the execution of its writ." *State Bank of Ceresco v. Belk,* 68 Neb. 517, 94 N. W. 617; *Riggs v. Hroch,* 133 Neb. 260, 274 N. W. 598. We believe, without question, plaintiff's petition properly predicates an action under either or both of the two classes of creditors' bills.

This court held in *Butke v. Nachschoen,* 133 Neb. 366, 275 N. W. 318: "A conveyance from a husband to his wife is presumptively fraudulent as to an existing creditor, and in litigation between the creditor and grantee on that issue, the burden is on the latter to establish the good faith of the transaction by a preponderance of the evidence. *Christensen v. Smith,* 123 Neb. 388, 243 N. W. 118." With this rule in mind, the burden of proof would be on the grantee to establish by a preponderance of the evidence the *bona.fides* of the conveyance or transaction.

In considering the question of fraudulent intent this court has held: "The question of fraudulent intent is to be considered as of the time when the conveyance is made, and with reference to the particular conveyance alleged to have been fraudulent as against creditors." *Tanner v. Frink,* 103 Neb. 817, 174 N. W. 417; *Butke v. Nachschoen, supra.* And, as to the circumstances under which a conveyance is to be declared fraudulent, this court has adopted the following rule: "A conveyance is declared to be fraudulent when its object or effect is to defraud another, or the intent with which it is made is to avoid some duty or debt due by or incumbent upon the party making the transfer." 27 C. J. 415; *Butke v. Nachschoen, supra.* In the same

connection, as respects fraudulent conveyances, "Fraudulent intent may be established by proof of facts from which such inference may be reasonably drawn." *Peterson v. Wahlquist*, 125 Neb. 247, 249 N. W. 678, 89 A. L. R. 747; *Riggs v. Hroch, supra.*

In considering all of the evidence, facts and circumstances in this case, the trial court, after setting aside the homestead rights of the parties in interest, found that such conveyance, made by defendant Joe H. Peck to his wife, Melissa, was fraudulent and did hinder and delay creditors, and especially the creditor plaintiff.

The statutory provision applicable to this class of cases follows: "Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods or things in action, or of any rents or profits issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, made with the intent to hinder, delay or defraud creditors or persons, of their lawful rights, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, or decree or judgment suffered, with the like intent as against the persons so hindered, delayed or defrauded shall be void." Comp. St. 1929, sec. 36-401. And, as stated in the body of the opinion in *Riggs v. Hroch, supra*: "In the application of this provision to transactions between husband and wife, especially where the result thereof is to deny creditors of the husband their just demands, we are committed to the doctrine that conveyances between close relatives are presumptively fraudulent as to an existing creditor, and in litigation between the creditor and the parties to the conveyance over its alleged invalidity, the burden is on them to establish the good faith of the transaction by a preponderance of the evidence. *Lincoln Savings & Loan Ass'n v. Mann*, 129 Neb. 26, 260 N. W. 559; *Waterbury State Bank v. O'Neill*, 129 Neb. 150, 260 N. W. 808; *Gentry v. Burge*, 129 Neb. 493, 261 N. W. 854."

In the case at bar the conveyance was made by the husband to the wife, both of them knowing at the time of the

existence of defendant Joe H. Peck's indebtedness to plaintiff, and, in fact, defendant Joe H. Peck had stated that he was trying "to get the thing settled." The trial court set aside in its decree and provided for the homestead interest of the parties and found, from all the facts and circumstances, that the conveyance should be set aside. It had opportunity to observe the witnesses, their general demeanor and conduct while testifying, and the facts about which they testified, and to test their credibility, and in this connection this court has held: "Where the evidence is conflicting and cannot be reconciled, this court, upon a trial *de novo* * * * will consider the fact that the district court observed the demeanor of witnesses and gave credence to the testimony of some rather than to the contradictory testimony of others." *Cunningham v. Armour & Co.*, 133 Neb. 598, 276 N. W. 393.

A careful examination of the entire record, and in the light of the authorities cited, convinces us that the trial court was correct in its determination of this action. The judgment of the district court is therefore

AFFIRMED.